No. XIX.

D. G. & R. MILLS v. EDWIN WALLER.

(See Note 20.)

*Appeal from Brazoria County.*

HEMPHILL, CHIEF JUSTICE.—The appellants commenced their suit in the District Court for the County of Brazoria on the 28th day of February, 1837, against one John Thomas, to recover a debt of $958.22, with interest at 10 per cent from the first day of October, 1836, being the balance due on a note of hand drawn by the said Thomas in favor of the appellants, and dated the 17th day of May, 1835. The petition prayed for a writ of attachment, alleging that the said Thomas was an absentee, and that he owned a tract of about 800 acres of land in the county of Brazoria. The attachment was issued and executed on the day above named on the land described in the petition. On the 4th of March following, a supplementary petition was filed, alleging it had been discovered that the said Thomas had property of a movable nature within the county, and that unless the same were attached they feared the loss of their debt—the land being incumbered with a mortgage belonging to McKinney and Williams. On the second writ of attachment issued, the sheriff made the following return: "Not being able to find the specific property described in that instrument, I thereupon seized and sequestered all the property in this county in the *defendant's brand.*"

At the succeeding term of the court, the curator appointed to represent the interests of the absent defendant put in his answer, disclaiming for the defendant all right, title and interest in the land attached, and that long prior to the levying of said attachment the land had been sold by the said Thomas to one Moses L. Patton. At the said term of the court, Edwin Waller, the appellee, filed his plea of intervention, alleging his ownership of the land attached, and that it was in nowise responsible for the liabilities of Thomas. The appellants put in a general denial of the allegations of the intervener, and at the spring term of the court of 1838, the jury found a verdict in the following terms: "We, the jury, find judgment for Mills against Thomas for $950.22,

---

T. C. A., 79; Bank v. Lynch, 6 T. C. A., 590; Walker v. Fearhake, 22 T. C. A., 61; Bank v. De Morse (T. C. A.), U. R. C., 1894; Snelling v. Koerner (T. C. A.), U. R. C., 1894. Unliquidated against unliquidated. Bodman v. Harris, 20 T., 31; Sanders v. Bridges, 67 T., 93; Taylor v. Bewley, 93 T., 524. But damages arising from separate torts can not be set off against each other. Hart v. Davis, 21 T., 411; Boyd v. Clark, 21 T., 426; Shook v. Peters, 59 T., 393. **Mutual**

with interest at 10 per cent from the 1st of October, 1836, as specified in the note, and that the property attached is not liable for the debt." Judgment was in accordance with the verdict, and we are asked to reverse the same on various grounds.

1. It is alleged to be manifestly erroneous in not condemning the personal property attached as liable to the demand of the appellants. The return of the sheriff to the second writ of attachment is exceedingly indefinite. He does not enumerate the articles of property levied on, nor does he affirm that they are property of the defendant; but that being unable to find the specific property described in the instrument, he had seized on everything in the *defendant's brand*. With this vague return of the sheriff, and in the absence of all proof that the articles attached belonged to the defendant, we are of opinion that the jury was justified in finding that the said property was not liable to the debt of the appellants. But the decision of this question is unnecessary. The appeal bond has been executed in favor of the intervener alone; and our revision of the decision of the court below will not extend beyond the matters in controversy between the said intervener and the appellants.

2. That the sale from Thomas to Patton was void, on several grounds. First, the disparity between the price paid by Patton and the value of the land raises a violent presumption of fraud, which amounts to conviction when it is observed that Patton in his subsequent sale to Waller refuses to warrant against any existing lien. Patton purchased the land from Thomas in the town of Liberty on the 3d of April, 1836, for $1000, and on the 24th day of February, 1837, sold to Edwin Waller, the appellee, for $5500. It appears that the sale from Thomas to Patton took place at a time when the county of Brazoria was invaded by the Mexicans and generally abandoned by its inhabitants. It is stated that the land was proven to be worth $7000. It is to be regretted that facts are not more fully and clearly set forth in statements furnished from the courts below. We are not informed whether this was the value of the land at the period of its sale to Patton, or at the time of the trial— whether it was worth $7000 when the country was occupied by an overwhelming invading army and subjected to all the horrors of war, or in a period of comparative peace and prosperity. To raise the presumption of fraud the disparity must be shown to exist between the consideration paid and the actual value of the thing at the period of sale. We are not informed that this was attempted in this case, and the verdict of the

accounts may be set off against each other. Hall v. Hodge, 2 T., 323; Crook v. McGreal, 3 T., 487; Campbell v. Park, 11 T. C. A., 455. Usurious interest against principal. Huggins v. Citizens Bank, 6 T. C. A., 33. Apparent legal holder of note may plead it in set-off. Thomas v. Young, 5 T., 253. Courts have power to set off mutual judgments against each other, independent of statute. Simpson v. Houston, 14 T., 476; Duncan v. Bullock, 18 T., 541; Dutton v. Mason, 21 T. C. A., 389. Debt due deceased person or his estate may be set off in an action by legal representative, though it has not been presented for allowance. Morton v. Gordon, Dal., 396; Thomas v. Hill, 3 T., 270; Smalley v. Trammell, 11 T., 10; Hall v. Hall, 11 T., 526; Dickenson v. McDermott, 13 T., 248; Mitchell v. Rucker, 22 T., 66; Andrus v. Pettus, 36 T., 108; Alford v. Smith,

jury repelling the presumption of fraud, we are forced to the conclusion that the value proved referred to the time of the trial and not of the sale. From such evidence, the jury were not authorized to infer that the price paid for the land two years previously was so grossly inadequate as to be fraudulent against third parties, and especially when it is recollected that the sale was effected when the county was deserted by its inhabitants, desolated by a powerful invading force, and by many of the best patriots believed to be irretrievably lost.

There is no evidence that Patton had any knowledge at the time of his purchase of the existence of the demand of appellants against Thomas. This must be proven before the alienation to Patton could be set aside as fraudulent. It is not sufficient to establish fraud on the part of the vendor and actual injury to creditors; but a knowledge of the fraud on the part of the vendee must also be proven. In Curia, Phillip, Lib. 2, chap. 13, the law on this subject is expressed in the following terms: "Y asi en la enagenacion por titulo oneroso, se requieran tres cosas; fraude de parte del enagenante, y sciencia de el de parte del recibiente, y el evento o suceso del fraude en dano de los acseedores." See also Kenney v. Dow, 10 Martin, 577. Nor is there proof that the insolvency of Thomas was known to or suspected by Patton, or that the creditors of Thomas would be injured or affected by the purchase of the land. The fact that Patton in his sale to Waller refused to warrant against any other claim to the land than his own, does not in our opinion raise the presumption of fraud in the first transaction. Nearly eleven months elapsed between the first and the latter sale. Ample time was afforded Patton to become acquainted with the fact of incumbrances and claims against the premises; and his refusal to give more than a quitclaim title can not be regarded as other than an evidence of a desire on his part to avoid litigation.

But it is said that the sale from Thomas to Patton was an act under private signature; that the law of Louisiana in relation to attachments was then in force in this Republic, and that under that law it has always been decided that an attaching creditor had a preference over a purchaser under private act not recorded; and that therefore the sale to Patton has no force and validity as against the appellants. The decisions referred to were not founded on any provisions of the act regulating attachments; but on various other articles of the code prescribing the effect and operation of sales under private signature as between the parties to the same, and also in relation to third persons. This portion

---

40 T., 77; Traders Bank v. Cresson, 75 T., 298; Chapman v. Brite, 4 T. C. A., 506; Walker v. Fearhake, 22 T. C. A., 61; Collins v. Barbee, 3 App. C., sec. 126. If claim has been approved, can not be used as set-off without showing necessity for equity. Robb v. Smith, 40 T., 89; Floyd v. Rust, 58 T., 503. Executor can not set off damages for harassment and attorney's fees against claim due from estate; nor a debt due the estate by an assignor of a claim due by the estate. Selkirk v. McCormick, 33 T., 136; House v. Collins, 42 T., 486. An heir can not set off a debt due estate with his distributive share. Guthrie v. Guthrie, 17 T., 541. Set-off can not be allowed against State, unless authorized by statute. Borden v. Houston, 2 T., 594; Bates v. Republic, 2 T., 616; Chevallier v. State, 10 T., 315; Dean v. State, 54 T., 313, 314; State v. Snyder, 66 T., 687.

of the laws of Louisiana has never been in force in this Republic; and the decisions thereon can not be regarded as authority. It can not be denied, however, that the provisions of the laws of Spain in relation to private acts are similar to those of Louisiana, and that under both systems it is an established principle of law (though not without several modifications and exceptions) that acts under private signature have no dates as against third parties. The subject is not without its perplexities; but it will be sufficient to discuss and resolve them when they fairly arise in a case before the court. In the present instance it is unnecessary. The objections made to the act of sale is, that it was under private signature, and therefore inoperative against the appellants. Without touching on the subject of conveyances generally, we are of opinion that this was not a private, but an authentic act. It was executed before a notary public, with instrumental and assisting witnesses, and is free from all the objections which could be urged against it as an act under private signature. If it were agreed that this conveyance was effected by the registration law of 1836, yet it was not required to be recorded until long after the commencement of the action. It is, however, clear that the rights of the parties arose under the laws in force at the time of the execution of this instrument; that they are controlled and established by these laws, and not by subsequent acts of legislation.

Upon the consideration of the whole matter, the jury having found in favor of the appellee, and there being no sufficient proof to rebut the presumption always arising that a verdict is correct, we are of opinion that the appeal should be dismissed; and it is hereby ordered and decreed that the same be dismissed, and the judgment of the court below be affirmed.

*Dismissed.*

## No. XX.

### WM. G. HILL v. WM. McDERMOT ET UX.

#### (See Note 21.)

*Appeal from Brazoria County.*

HUTCHINSON, JUSTICE.—On the 9th of September, 1837, the appellees sued the appellant for restoration of the slaves Priscilla and her child Sylvia, or their value with damages and costs. The answer admitted defendant's possession, denied title in the plaintiffs, and averred that the defendant purchased from Edwin Waller, praying that he should be cited as warrantor. Waller answered, impleading Fitchett and Gill, his vendors; and they answered that they purchased from John Chafin, and impleaded his administrator, who in his answer denied the

---

When two are separately liable for the whole debt, it may be set off against either of them. Rust v. Burke, 57 T., 341; Fleming v. Stansell, 13 T. C. A., 558. Creditor of husband can not set off debt of husband against use and

allegations in the petition. There was a verdict for the plaintiffs against the defendant, and verdicts over for the respective vendees against their warrantors; but a new trial was granted. An amended petition was then filed, alleging that Chafin, in 1836, forcibly took from plaintiff Elizabeth, then the widow of Whitfield Sledge, the two slaves, which she believed her property, and of which she was peaceably possessed at the seizure. The answer to this is only a general denial, relying on prescription. On the 23d of March, 1840, there was a verdict finding the slaves to be the property of the plaintiffs, and assessing $900 as their value, and $350 the damages for their services; and a judgment for them for those sums with their costs.

The evidence, so far as certified, was that Sledge and wife emigrated from Georgia to Texas prior to August, 1835, in which month he died; that they brought with them the woman Priscilla, whose child Sylvia was born in Texas, though when born does not appear; that Sledge, on January 13, 1834, at Brazoria, made to John S. D. Byron the deed for Priscilla of that date, to secure $69 at three months; and on April 3, 1834, made a deed to Chafin for the same slave, to secure him on the 1st of January following $342, with $12½ per cent interest, the Byron debt, with 5 per cent per month, and $25 borrowed by Pace; and that in the spring of 1836, Chafin, with force, took both slaves out of the possession of the plaintiff Elizabeth and carried them away. The deponent Tennelli, in his deposition, states that he knew the slaves were the property of the female plaintiff; but also mentions that he never heard Sledge or anyone else say the negro was exclusively her property. The deeds were acts under private signature, but were proved in court at the trial; and there was evidence of the value and hire of the slaves. It is not certified by the judge, nor does it otherwise appear, that these were all the facts proved. The court instructed the jury that the wrongful taking of the slaves could not be ground of damages between the present parties; that if the mortgage to Chafin was valid, or if the property in the negroes belonged to the succession of Sledge, they should find for the defendant; but if they believed from the evidence that the entire property in the slaves, at the taking, was in Sledge's widow, they should find for the plaintiff.

It is correctly contended that this being an action to recover specific property, it was incumbent on the plaintiffs to show title in themselves, and they could not prevail upon the mere want of title in the defendant. The suit involved the absolute right, dominion or ownership in the negresses, the demand being in that right; and to have justified a recovery, there should have been sufficient evidence of the allegation.

hire of wife's separate property. Carr v. Tucker, 42 T., 330. Quaere—Can damages growing out of suit in another State be pleaded in set-off in this State? Wiley v. Trawick, 14 T., 662; Withee v. Fearing, 23 T., 503. An assigned debt may be set off with a debt due from assignor before notice of assignment. Townsend v. Quinan, 47 T., 1; Fry v. Houston, 6 T. C. A., 710; Ellis v. Kerr, 11 T. C. A., 349; Tyler Car and Lumber Co. v. Wettermark, 12 T. C. A., 399; Henderson v. Johnson, 22 T. C. A., 381; McCarty v. Squyers (T. C. A.), U. R. C., 1896. Defendant may plead any set-off acquired before

Any defect in the averment of title was cured by the answers, denying the right claimed. Our chief embarrassment, however, arises on the inquiry, whether the record shows, all things considered, that the jury had evidence or grounds legally sufficient to authorize their verdict for the plaintiffs. We have only what Tennelli, in his deposition, says in regard to the ownership of the plaintiff Elizabeth. If he knew, as he asserted, that the slaves belonged to her, it was immaterial what her former husband or anyone else had declared or had not declared. The question on the trial might have been raised whether such oral testimony of ownership was competent, or whether there was any higher evidence extant and not produced; but nothing of this sort was agitated. If the witness was interrogated as to the circumstances of the acquisition, as for instance, how, when, of whom, where and by what contract, solemnity or process she had become the owner of Priscilla, the evidence thus elicited should have been certified. The judge in his statement of the proof does not attempt the minutia, but gives only what were, in his estimation, results of the proof; or more indefinitely that such and such facts were in evidence. Two juries have found ownership in the plaintiffs; and the party, considering himself aggrieved should have had such a memorial made of the proof as would have satisfied the revising court that the whole, in substance at least, was embodied. Even then we would have been in a condition to consider only, but not weigh it; yet still we should have been better assured of the conclusions we should derive from it. Taking the exhibition of the proof sent up as containing the whole, we are not satisfied with the assumption by the appellant's counsel that there was a failure to prove title in the plaintiffs. We are not to presume that anything was proved but what is certified; but, in favor of two concurring verdicts, we assume as true that there was no evidence of the laws of Georgia concerning the rights of the wife in personal property in the possession of the husband or family; that there was no proof of an administration on the estate of Whitfield Sledge, nor any evidence of there being any heirs of the decedent. But it is insisted that this court knows, as a matter of public national history, that the common law in Georgia regulated the relation of Sledge and wife, and gave to the husband the whole personal estate, in the absence of a legitimate express contract giving the wife a separate property. We are presumed to know what doctrines of the common law pertain to the jurisprudence of Texas; but this presumption does not carry our judicial knowledge beyond the limits of the Republic as to any doctrine

---

filing plea. Thomas v. Young, 5 T., 253; Parrott v. Underwood, 10 T., 48; Wright v. Treadwell, 14 T., 255; Gaines v. Salmon, 16 T., 311; Lemmon v. Box, 20 T., 329.

**Note 14.**—Fowler v. Poor, p. 401.

Attachment proceedings must be commenced by petition or concurrent with same. Wooters v. McGee, 1 T., 17; Cordova v. Priestly, 4 T., 250; Bowers v. Chaney, 21 T., 362; Kennedy v. Morrison, 31 T., 207; Whitemore v. Wilson, 1 U. C., 216; Jones v. Stone, 2 App. C., sec. 358. Petitions not necessary in justice court. Henry v. Blasco, 1 App. C., sec. 765; but citation must issue before or at same time. King v. Robinson, 2 App. C., sec. 555. Is a harsh

or rule of municipal law of any kind in use in a foreign State. Were we bound to know the marital rights of a couple at a given date in Georgia, we should be bound to know those of another, at another date, in the Hebrides, in Hindoostan, in China, or in any island of Oceanica. We are to notice officially the jus gentium; but not the internal or municipal laws of other countries. These last must be proved—written laws by authenticated copies, and unwritten ones by the oral testimony of those skilled in them. In Gale v. Davis' Heirs, 4 Martin, 645, the judge delivering the opinion of the court referred to the laws of North Carolina in regard to the rights of the husband in personalty; and though it is not reported whether or not those laws were proved in that case, yet the doctrine for which it is cited is not ruled. That foreign laws must be proved is an established principle of the common law; and it is equally the rule according to the civil or Spanish law. Boggs v. Reed, 5 Martin, 673; Wakeman v. Marquand, 5 Martin (N. S.), 265.

The laws of the country in which the slave Priscilla was acquired by Sledge, or his wife, if they had been proved on the trial, would have governed in determining the ownership. Contracts made in a foreign country are to be expounded according to the lex loci contractus, whilst the remedies to enforce them are to pursue the lex fori. The maxim, "actor sequitur forum rei," is a part of the law of nations. Morris v. Eves, 11 Martin, 730; Lynch v. Postlethwaite, 8 Id., 69. When, however, the law of the place where the parties contracted or their rights originated is not set forth, the court is to proceed upon the domestic code. Campbell v. Henderson, 3 Martin (N. S.), 152. And where there is a conflict, it being doubtful which system of law should be applied, that of the forum prevails. Saul v. His Creditors, 5 Martin (N. S), 569. Here it is proved only that Sledge and wife emigrated from Georgia to Texas, not that they were married there, not that Priscilla was acquired before or after marriage, nor that the acquisition was in a civil or common law country. How then, upon the data and principles before us, does the question of title in the plaintiffs stand? A witness proves ownership of Priscilla and Sylvia to have been in the female plaintiff, with possession, when Chafin's tortious capture occurred. She was then the widow of W. Sledge, who had died the year previous. Whether he died estate or intestate, or with or without a devisee or heir was not shown—and whether the witness was or was not mistaken as to knowledge of ownership can alone rest on supposition and conjecture. If Sledge died without an heir of any class under the Spanish law; if, too, no one had obtained administration of the succession, in the ab-

---

and summary remedy and all precedent conditions must be strictly complied with. Raquet v. Nixon, Dal., 386; Sloo v. Powell, Dal., 467; Gregg v. York, Dal., 528; Sydnor v. Chambers, Dal., 601; Wooters v. McGee, 1 T., 17; Chevallier v. Williams, 2 T., 239; Caldwell v. Haley, 3 T., 317; Sydnor v. Totman, 6 T., 189; Marshall v. Alley, 25 T., 342; Culbertson v. Cabeen, 29 T., 247; Sheffield v. Gay, 32 T., 225; Moody v. Levy, 58 T., 532; Evans v. Tucker, 59 T., 249; Stiff v. Fisher, 2 T. C. A., 346; Sarrazin v. Hotmann, 16 T. C. A., 351; Ball v. Bennett, 21 T. C. A., 399; Dreiss v. Faust, 1 App. C., sec. 33; Whitley v. Jackson, 1 App. C., sec. 575; Schwartz v. Burton, 1 App. C., sec. 1216;

sence of any proof showing that the husband had had the sole right, was not his widow the sole heir and owner and entitled to sue for restoration? "If no relation exist [such as might inherit] and the deceased leave a legitimate wife, she will inherit the whole of his estate; and we say that the husband will inherit from his wife in like circumstances." 2 Partidas, 1101, 1102.

We may now advert to the defendant's title. It is derived through intermediate vendors from Chafin, who by a violent seizure and asportation obtained possession. Had he title above that of a trespasser? The deeds produced to show his right, in the view of the Spanish law, were instruments of pledge, being of personalty, as contradistinguished from a mortgage which had for its object real estate. By that law the estate pledged, whether real or personal, constituted the chief distinction—the name, prenda, or hipoteca. Either afforded a security for the sum due. In a pledge of the voluntary class, such as that before us, possession of the pledge is not necessary to create the obligation. If the thing pledged had been sold by the pledgor before his delivery of it to the pledgee, the latter was put to his suit against the debtor; and after that he was allowed to sue for the thing pledged. The instrument of pledge might be transferred; but the pledgee might sell the thing, if no day of payment was fixed, on giving the debtor notice. If a day was named, then a judicial order and public auction were required. 1 White's Recopilacion, 139-143. There is therefore no ground on which to presume possession in Chafin; and if there were, the proof given shows the possession to have been in the female plaintiff, and in her family prior to the seizure.

The deeds of pledges, which under the common law would have been mortgages, were deeds under private signature, and took date, that is to say, acquired efficacy, only from the time of being proved on the trial, as against the plaintiffs, unless it had been shown that W. Sledge, the pledgor, was the sole owner at the giving of the pledges; for in the case excepted, the female plaintiff would have been affected as the wife of the pledgor. But it is not necessary to dwell or rely on this consideration. The deeds, especially that to Chafin, attempted on its face to secure 12½ per cent interest per annum and 5 per cent per month, both illegal and usurious exactions, which rendered the pledge to Chafin wholly void. His deed was not such as would have been enforced either in the ordinary mode by judicial suit or by the award of executive process. He acquired no right under the deed because of its turpitude. "Contracts made by such persons (usurers) are null. The usurer for-

---

Scram v. Duggan, 1 App. C., sec. 1269. No presumption will be indulged to supply defects. City Nat. Bank v. Flippen, 66 T., 610; Focke v. Hardman, 67 T., 173; Perrill v. Kaufman, 72 T., 214; Moore v. First Nat. Bank, 82 T., 537. But literal exactness is not required. Lewis v. Stewart, 62 T., 352.

Note 15.—Cayce v. Curtis, p. 403.

At common law, the seal is an absolute requisite to the validity of a bond. Sloo v. Powell, Dal., 467. It is unknown to the civil law and not essential to the validity of obligations and other instruments. Cayce v. Curtis,

feits or loses that which he lends on usury and he pays as much more. Being a second time guilty of the offense, he forfeits the half of his property; and the third time, he forfeits the whole." 1 White's Recopilacion, 255; Herman v. Sprigg, 3 Martin (N. S.), 190. And the pledgee, not having and right or valid lien on the slaves, the subsequent vendees could take nothing under their purchases. There was no attempt to make an ostensible legal transfer under the deed by ordinary or executive process. There can be no objection to this rejection of the deed for usury. It is produced by the administrator of Chafin as evidence to sustain a vendee under him; and it bears on its face the taint of its own turpitude.

It is urged lastly, that if the recovery be permitted it will be no bar to a subsequent recovery by the heirs of Whitfield Sledge. To this we answer, that there is no heir disclosed other than the female plaintiff; and if there be any other heir and he shall sue, we are not at present prepared to say that he could prevail, if the recovery in this case should be duly pleaded and shown in bar of the action. It is sufficient, however, to remark that the allowance of such petitio principi might, in any case, defeat the recovery of the apparent owner.

Were we to take a different view of the evidence of ownership in the plaintiffs, we should nevertheless remand the cause; and this we should do in order to afford to a defendant, deriving title from a source that must remain impure, to protect his purchase, as against one whose peaceable possession was violently determined and who has the verdicts of two juries in favor of her ownership.

There being no evidence that Sylvia was born subsequent to the pledge, it is uncertain whether the right attempted to be derived under it included her; but as the judgment below is to be corrected and conformed to the verdict, it is needless to consider this matter.

The judgment ought to have been for the restitution of the negroes.

This cause coming on to be heard on the transcript of the record, and it being inspected, and the arguments of counsel heard, because it seems to the court that there is no error, except that the judgment below ought to have been for the restitution of the slaves, if to be had, with the damages assessed; and if not to be had, then the value and damages assessed; it is therefore considered by the court here that the said William McDermott and Elizabeth, his wife, recover of the defendant William G. Hill the slaves Priscilla and Sylvia, if to be had, with the damages for detention, assessed to $350, and the costs below; and if said slaves can not be had, then that they recover of him $900, the

Dal., 403; Cayce v. Horton, Dal., 405; Sloo v. Powell, Dal., 467; Foster v. Champlin, 29 T., 22. The common law term "bond" has never been adopted in this State and it is not necessary for bonds to have private seals. Foster v. Champlin, 29 T., 22; Courand v. Vollmer, 31 T., 397. Under Act of February 5, 1840 (Gammel's Laws of Texas, vol. 2, p. 327), providing that a scroll should take the place of a seal, provided it be recognized in the body of the instrument by the person making it, the recognition was not required to be in any specific terms. The use of any words in the body from which recognition could be fairly inferred, was sufficient. Flemming v. Powell, 2 T., 225; Eng-

value of the slaves assessed, together with those damages and costs; and it is further considered that the appellees, McDermott and wife, because of this correction of their judgment, do pay to the appellant, Hill, his costs herein in this court expended.   Let this decision be certified below to be executed.

*Reformed and affirmed.*

## No. XXI.

JAMES KNIGHT ET AL. v. GEORGE HUFF, ADMINISTRATOR, ETC.

*Appeal from Austin County.*

SCURRY, JUSTICE.—The petition in this case recites that John Dinsmore, James Cochran, surviving partner of Walter C. White, deceased, and W. D. C. Hall, jointly and severally promised to pay the said George Huff, administrator of Samuel Sawyer, deceased, the sum of $635.   The instrument of writing upon which the said action is founded bears date the 15th day of November, 1835.   It appears from the facts of this case that said Samuel Sawyer, on the 10th day of November, 1832, promised in writing to pay W. C. White & Co., on demand, the amount which might fall due to the said White & Co. from the estate of Lewis L. Vieder, deceased.   It appears that by a settlement made before L. Lassassua, alcalde of the municipality of Austin, on the 10th day of May, 1833, between George B. McKinstry, administrator of the estate of the said Lewis L. Vieder, and the said Walter C. White for himself and company, that the estate of the said Lewis L. Vieder fell in debt to the said Walter C. White & Co. in the sum of $427.10, which determined the nature and amount of the said demand; which said demand was transferred by the said Walter C. White for himself and company to George Huff, administrator of the estate of the said Samuel Sawyer, on the 24th January, 1834.

From the testimony of J. H. Money and J. Benton Johnson, the chief justice and clerk of the county of Austin, it appears that George Huff, administrator of the estate of the said Sawyer, on the 24th day of August, 1838, exhibited his petition, praying that certain papers in possession of the estate of Wm. Barrett Travis, deceased, were material to the administration of the estate of the said Sawyer and in nowise connected with the estate of the said Travis, and among others the obligation of Sawyer of the 10th of November, 1832, which was delivered to Huff, as administrator of the said Sawyer in accordance with the prayer of the said petition.

---

lish v. Helms, 4 T., 228; Read v. Levy, 30 T., 738.   The first section of Act of 1840 was restraining, and confined to instruments for conveyance of estates of inheritance or freehold or for a term of more than five years, and the intent to seal was sufficient, if expressed in any part of the instrument not within the purview of this section.   English v. Helms, 4 T., 228; Clayton v. Pridgen, 8 T., 308; Conner v. Autrey, 18 T., 427; Muckleroy v. Bethany, 23 T., 163; Muckleroy v. Bethany, 27 T., 551; Richarz v. Wolcken, 34 T., 102.   Under Act

From the testimony of Ira R. Lewis it seems that the note on which this action was founded was given by the appellants, White and Hall, at the succession sale of the said Sawyer, deceased (White signing the note for himself, Dinsmore and Cochran), for cattle purchased by the said White and Hall; and Lewis states that when called upon for a settlement of estates between Huff and himself—one as administrator of the estate of Vieder and the other of the estate of Sawyer—that Huff had Vieder's estate charged with the judgment of Walter C. White & Co., "and said that he had paid it with the note given for cattle purchased at the succession sale, before named," and that it was then a claim in his (Huff's) hands as administrator of the estate of Sawyer against Vieder's estate. The verdict of the jury was for the full amount of the note sued upon without interest.

The only question for the court to decide upon is whether the amount recovered against Sawyer as administrator of the said Vieder is a good set-off against the demand of Huff, as administrator. The court is of opinion that it is. The nature of the first obligation to Sawyer is uncertain; but is determined by the settlement made before Lassassua on the 10th of May, 1833. Huff, as administrator of Sawyer, on the 24th of August, 1838, by petition to the chief justice of Austin County and order of the probate court of said county came in possession of the obligation from Sawyer to White and White & Co., of the date of November 10, 1832, and from the testimony of the said Lewis it appears that he had charged the estate of the said Vieder with the identical amount of the said settlement of the 10th of May, 1833, which he said he had paid with the note "given for cattle at the succession sale of Sawyer in November, 1833." This testimony determines the nature of the suit. It is evident that when the purchase of the cattle was made in 1833, and the transfer of the amount due on settlement in May, 1833, in January, 1834, that the intention of the parties was that the amount of the settlement given in favor of White and White & Co. should be deducted from the amount of the note now sued upon, and therefore the court are of opinion that the offset should have been allowed and that there was error in the court below in not allowing the offset, and that judgment be rendered for the appellee for the sum of $207.90, and be taxed with the cost of this appeal.

of 1840, contracts to transfer land certificates and headright claims were not required to be under seal. Randon v. Barton, 4 T., 289; Bledsoe v. Cains, 10 T., 455. It was not necessary for an obligation to pay money, nor its assignment, to be under seal. Durst v. Swift, 11 T., 273; Jones v. Holliday, 11 T., 412; Holman v. Criswell, 13 T., 38. Nor was it necessary for a contract to sell land to be under seal. Miller v. Alexander, 8 T., 36; Holman v. Criswell, 13 T., 38; Fisk v. Miller, 13 T., 224; Eckhart v. Reidel, 16 T., 62; Martin v. Weyman, 26 T., 460; Courand v. Vollmer, 31 T., 397; Wright v. Lancaster, 48 T., 250, 256; Downs v. Porter, 54 T., 59, 64. A deed without seal or scroll was admissible in evidence to show equitable title in vendee, and deed was entitled to record under section 7 of Act of 1840, though not under seal. Miller v. Alexander, 8 T., 36; Saunders v. Hartwell, 61 T., 679, 686; Tom v. Sayers, 64 T., 339; Frost v. Wolf, 77 T., 455. Act of February 3, 1841 (Gammel's Laws of Texas, vol. 2, p. 608), providing that "when a husband and wife have sealed," etc., was not applicable to sales of personal property. Stooks-

## No. XXII.

### ISABELLA M. ANDREWS V. EDMUND ANDREWS.

(See Note 22.)

*Appeal from Brazoria County.*

HANSFORD, JUSTICE.—The transcript of the record from the court below (Brazoria) exhibits the following facts: At the fall term of the District Court of Brazoria County, Isabella M. Andrews commenced her suit against her husband, Edmund Andrews, praying to be divorced a vinculo matrimonii, and also praying for alimony pendente lite. That part of the petition of the plaintiff which prays for alimony pendente lite was granted at the said term of the court, and it was ordered, adjudged and decreed by the court that Edmund Andrews, the husband of defendant, pay to the attorney of record of Isabella, the sum of $500, and that on the first day of January, 1840, he pay the further sum, etc., during the pendency of the suit for divorce. The sheriff of Brazoria County made his return upon this order, or decree for alimony pendente lite, on the first day of October, 1840, by which it appears that the defendant refused to pay the several sums as ordered and decreed by the district court, and also refused to point out any property to be sold by the sheriff to be applied in conformity with the order or decree of the court.

At the October term, 1840, of the district court for said county, a motion was made by the counsel of Isabella for an attachment against the body of Edward Andrews for contempt, and to compel the performance of said decree for alimony pendente lite, which motion was overruled and refused, and to this decision the counsel for Isabella Andrews excepted and appealed to this court.

Whether the Supreme Court can entertain jurisdiction of this cause is, we think, the only question presented now for our consideration. As the decree was for alimony pendente lite, and consequently interlocutory, it would be manifestly incongruous and unseemly, to say the least of it, for the Supreme Court to entertain jurisdiction of and adjudicate upon the interlocutory decrees of an inferior court, while the substantive or original action upon which such decree is founded shall still be pending in the court below.

In Metcalf's case, 11 Coke, 38, it was decided that a writ of error would not lie in a judgment quod computet, because it was not a final decision; and it seems to be a rule of law, as well settled as any other rule, that a writ of error will lie only in cases where the judgment is

berry v. Swann, 12 T. C. A., 66, 73. Act of February 2, 1858 (Gammel's Laws of Texas, vol. 4, p. 968), dispensed with the use of seals on all private instruments, except contracts of corporations. This statute with the amendment of April 28, 1873 (Gammel's Laws of Texas, vol. 7, p. 503), constitute Rev. Stats., 1895, art. 4862. Harris v. Cato, 26 T., 338; Wimbish v. Holt, 26 T., 673; Read v. Levy, 30 T., 738; Courand v. Vollmer, 31 T., 397; Bernhard v.

technically ideo consideratum est. Field, a writer of the greatest accuracy and of high celebrity, states the rue in the words of Coke, that there must be a final judgment, or an award in the nature of a judgment, or else a writ of error will not lie. 2 Tidd, 1062. These expressions are broad and it must be admitted are clearly opposed to the idea of a superior court entertaining jurisdiction and trying questions of mere interlocutory proceedings of inferior tribunals. Again, "A writ of error," says Lord Coke, "lieth when a men is grieved by an error in the foundation, proceeding, judgment or execution; but without a judgment, or an award in the nature of a judgment, no writ of error doth lie, for the words of the writ are 'si judicium redditum sit,' and that judgment must be regularly given by judges of record." Coke upon Littleton, p. 288. And we hear Lord Holt thus speak in delivering his opinion in the case of Grenwett v. Burwell, 1 Salkeld: "A writ of error will not lie upon a conviction and imprisonment for contempt." And we hold the converse to be equally true and based upon the soundest logic, that if a writ of error will not lie upon a conviction and imprisonment for contempt, it can not lie for the bare refusal of a court to punish for contempt. This would be too great an absurdity for any man of common understanding to support.

We shall quote but one other authority and then rest this case upon the general principles of the common law to support and confirm our conclusions. Chancellor Kent says: "A writ of error will not lie upon an interlocutory judgment in an action of account, because it is an award, as that an assize should be taken, or a writ of inquiry issued, or a partition be made. It is not a final and definitive judgment in a cause; and error only lies on a judgment in which all the matter in the original cause of action is determined. It would produce infinite vexation to the courts and oppression to suitors, if error lay on any other than final judgment upon the merit of the cause."

The same doctrine in relation to the writ of error applies with equal force to appeals. Under our judicial system, an appeal is a concurrent mode with a writ of error in removing a cause from an inferior to a superior tribunal, a mode pointed out by the Constitution. And it is very certain that the same reasons why a writ of error will not lie, until a final determination of a cause in the court below, apply with equal if not with greater force to an appeal. And our own statute is explicit on this subject. In the third section of the act creating the Supreme Court, we have the following language: "And the said Supreme Court shall have jurisdiction over and hear and determine all manner of pleas,

---

De Forrest, 36 T., 518; Clayton v. Mooring, 42 T., 182. Under the statute of 1858 and the present law, the following instruments are valid without seal: (a) Appeal bonds. Russell v. McCampbell, 29 T., 31; Read v. Levy, 30 T., 738; Hart v. Kanady, 33 T., 720; Boney v. Waterhouse, 35 T., 178. (b) Attachment bonds. Bernhard v. De Forrest, 36 T., 518 (overruling Read v. Levy, 30 T., 738; Courand v. Vollmer, 31 T., 397; Hart v. Kanady, 33 T., 720); Gasquet v. Collins, 57 T., 340. (c) Certiorari and sequestration bonds. Courand v. Vollmer, 31 T., 397; Clayton v. Mooring, 42 T., 182; Tompkins v. Toland, 46 T., 584. (d) Appointment of substitute trustee. Jacobs v. Mildred, 53 T., 72; Cheveral v. McCormick, 58 T., 440. (e) Official bond of county treasurer

plaints, motions and controversies, civil and criminal, which may be brought before it by appeal, or other legal process, from any other court in this Republic, which may be cognizable in said Supreme Court, according to the Constitution and laws; provided that no appeal shall be granted, nor shall any cause be removed into the Supreme Court, in any manner whatever, until after final judgment or decree in the court below, except in cases expressly provided for by law." The meaning of the proviso in this section surely can not be mistaken, and in the case under consideration the motion was incidental to a decree, which decree was itself pendente lite, or it was incidental to another action. It would create intricate confusion in judicial proceedings and greatly oppress suitors if such a practice were to prevail. Reason forbids it. The whole tenor of the common law is against it, and our statutes forbid it. It is then our opinion that this court can not entertain jurisdiction of this cause, and it is accordingly dismissed.

*Dismissed.*

Judges Hemphill, Scurry, Baylor and Terrell say: "We concur in the result, but not in the entire opinion."

## No. XXIII.

### C. J. O'CONNOR v. A. N. VAN HOMME.

(See Note 23.)

*Appeal from Brazoria County.*

TERRELL, JUSTICE.—Van Homme brought his action in the District Court for the County of Brazoria against O'Connor to recover the value of work and labor done and performed by the plaintiff, Van Homme, upon a house built by him for the defendant O'Connor.

The plaintiff declared upon a special agreement and likewise upon a quantum meruit. The case was submitted to a jury, who returned the following verdict: "We the jury in this case find for the plaintiff four hundred and ninety-one dollars." Upon this verdict the court rendered the following judgment: "It is therefore considered by this court, ordered and decreed, that the plaintiff recover of the defendant the sum of four hundred and ninety-one dollars, with interest thereon, at eight per cent per annum, from the thirtieth day of October, 1840, until paid, and the costs of this suit." A motion for new trial was made by defendant's counsel upon the grounds "that the verdict of the jury was contrary to law, contrary to the evidence, and not supported by the contract of the parties." Which motion being overruled by the court, the defendant appealed to this court.

In support of the appeal it is urged that the verdict of the jury was not warranted by the contract sued on, and that it was contrary both to

and county scrip. De Wees v. Colorado County, 32 T., 570; Parker County v. Courts, 2 U. C., 398. Written contracts of corporations should be under cor-

the law and the evidence. To determine these points, we must look to the contract or agreement sued on and the testimony given at the trial. By the terms of the contract the plaintiff, Van Homme, bound himself (under a penalty of $500) to perform certain work therein specified upon a house for O'Connor, the defendant—which work he was to complete by the first day of June, 1839. And the defendant, O'Connor, bound himself (under a like penalty) to make to the plaintiff a title to the one-half or one-fourth of a league of land, and also to pay the plaintiff $150 in the promissory notes of the government, etc. The statement of facts shows that according to the proof the plaintiff did not complete the work within the time specified in the agreement; he can not therefore recover upon the writtn contract. The verdict of the jury, however, is evidently founded upon the demand of a quantum meruit. We must therefore direct our inquiry to the question whether this finding is supported by the testimony? To authorize an abandonment of the written contract declared upon, and a finding upon a quantum meruit, there must have been some new contract between the parties—some new agreement, either written or verbal between them; or there must have been some default on the part of the defendant which put it out of the plaintiff's power to comply with the writtn agreement on his part, or excused him from its performance. It is a well settled principle in the law of contracts that if A undertakes to perform certain work for B in a particular manner, or by a specified time, and B, by some act of his, put it out of the power of A to comply with the contract as made, B shall not be permitted to take advantage of his own wrong and force A to a specific performance; but A shall recover the value of his labor. In support of this position, numerous authorities might be cited, if necessary. In Chitty on Contracts, page 169, it is laid down: "If a man declare upon a special agreement, and likewise upon a quantum meruit, and at the trial prove a special agreement, but different from the one laid, he can not recover on either; but if he prove a special agreement, as laid, and the work done, but not pursuant to such agreement, he shall recover upon the quantum meruit, for otherwise he would not be able to recover at all." To the same point see Bul. N. P., 139; 2 Starkie, 95.

In Lirmingdale v. Livingston, 10 Johnson, 36, the Supreme Court of New York say: "It is (in Bul. N. P.) admitted to be now the rule, that if there be a special agreement, and the work be done, but not in accordance with it, the plaintiff may recover upon a quantum meruit," etc. And Lord Mansfield ruled, in Harris v. Oke, "that when the evidence would support a general count (supposing no special agreement

porate seal, but the ancient and technical rule that a corporation could act and speak only by its corporate seal is obsolete with us. Shropshire v. Behrens, 77 T., 275; Gas Co. v. Harber, 1 App. C., sec. 1123. Where an agent makes a contract under seal, without disclosing his agency, the party with whom he contracts can not elect to hold the undisclosed principal upon the contract. This principle is not changed by our statute. Rev. Stats., 1895, art. 4862; Sanger v. Warren, 91 T., 472. A contrary rule seems to be announced in Rutherford v. Montgomery, 14 T. C. A., 319, 323.

laid) the plaintiff may recover upon it, though there be a special agreement laid, whether he attempt to prove it or not." These decisions carry the principle even further than the general propositions which we have laid down above for the government of this case. We will now apply the facts to the principles laid down, and see whether the finding of the jury was contrary to law and contrary to evidence. According to the "statement of facts" contained in the record, the defendant O'Connor was to furnish the lumber for the building of the house. Carman, a witness called by plaintiff, proved that he once heard Van Homme complain that he had not a sufficiency of shingles to cover the house—that at that time there was a great scarcity of lumber, and it was difficult to obtain, etc.; he did not know, however, that there was not a sufficiency to finish that house, etc. Peter Latimer was also examined for the plaintiff, and stated among other things, he had often seen the plaintiff at work on the house referred to by the first witness, both before and after the 1st day of June, 1839. He stated that in the month of June or July, 1839, he heard Van Homme, *on several occasions,* complain to O'Connor that the *necessary lumber* was not furnished to do the work. In June or July, Van Homme called on O'Connor in presence of witness to furnish shingles to cover the house; and witness knew they were wanted for that purpose. There was a great scarcity of lumber in the town at the time the work was going on, etc. There was a good deal of contradictory testimony in the case. Pilkington, a witness called for the defendant, stated that O'Connor did a considerable portion of the work that was done to the house, and that before Van Homme began the work, O'Connor had nearly prepared the frame to be raised; that the materials (with the exception of the rafters) for building the house were prepared and collected nearly twelve months before Van Homme commenced the work; that Van Homme was frequently working for other people, when he had a sufficiency of materials before him, etc.; that he had frequently heard O'Connor request Van Homme to proceed to finish the house, and that Van Homme neglected to do so. That after the 1st of June, O'Connor told Van Homme if he would proceed and finish the house, he would not exact from him the forfeiture; that in August Van Homme said he had not time to work any longer, and left for Austin, etc. E. M. Pease, another witness called on the part of the defendant, sustained Pilkington in the most material statements made by him.

The question then recurs upon this statement of facts: Does the evidence sustain the jury in the verdict they have rendered? That it is variant, and in some degree contradictory, can not be denied. It is

**Note 16.**—Cayce v. Horton and Clements, p. 405.

At common law, the seal is an absolute requisite to the validity of a bond. Cayce v. Curtis, Dal., 403; Sloo v. Powell, Dal., 467. It is unknown to the civil law and not essential to the validity of obligations and other instruments. Cayce v. Curtis, Dal., 403; Cayce v. Horton, Dal., 405; Sloo v. Powell, Dal., 467; Foster v. Champlin, 29 T., 22. The common law term "bond" has never been adopted in this State and it is not necessary for bonds to have private

not for the court to attempt to reconcile these contradictory statements, or to give the preference in point of credibility to one set of witnesses over the other. That is the sole province of the jury—they have exercised that privilege, and it is not for this court to say, in the absence of all grounds for the assertion, that the jury have mistaken the facts or placed a wrong estimate upon the credibility or the legal effect of the testimony. If the jury gave full credence to the testimony of the witnesses Carman and Latimer, they prove the fact conclusively that O'Connor put it out of the power of Van Homme to comply with his contract by failing to furnish the necessary materials to finish the house by the time specified in the agreement. Both those witnesses say, that in the month of June or July (which must have been after the first of June) they heard Van Homme complain of the want of shingles to cover the house. If he had not furnished them some time in the month of June or July, it is conclusive that he had not furnished them before *the first of June;* consequently, it was put out of the power of the plaintiff to comply with the contract by the act of the defendant himself. Therefore the special agreement was no longer subsisting or in force between them, but had been put an end to by the conduct of the defendant himself, in failing to furnish the necessary materials for the building. Consequently the plaintiff had the right to abandon his written contract and rely upon a quantum meruit.

But even if the plaintiff had failed to perform his part of the obligation, the defendant by his subsequent conduct waived all the legal advantages of that failure. If he intended to rely upon a breach of covenant on the part of the plaintiff, it was his duty immediately to have notified the plaintiff of that fact; and not to have suffered him to continue in his employ through the months of June, July and part of August ensuing, which it is in proof he did do; and by the defendant's acquiescence in which, he deprived himself of all the benefits he might have derived from the plaintiff's failure to comply with his part of the contract; and by which he, tacitly at least, created a new obligation upon himself to pay to the plaintiff whatever his labor was reasonably worth.

The jury have said that labor was worth $591. One of the witnesses, a carpenter, too, said it was worth five or six hundred. Under all the circumstances, therefore, we do not think it right to disturb the verdict of the jury, and consequently we affirm the judgment of the court below with costs.

*Affirmed.*

seals. Foster v. Champlin, 29 T., 22; Courand v. Vollmer, 31 T., 397. Under Act of February 5, 1840 (Gammel's Laws of Texas, vol. 2, p. 327), providing that a scroll should take the place of a seal, provided it be recognized in the body of the instrument by the person making it, the recognition was not required to be in any specific terms. The use of any words in the body from which recognition could be fairly inferred, was sufficient. Flemming v. Powell, 2 T., 225; English v. Helms, 4 T., 228; Read v. Levy, 30 T., 738. The first section of Act of 1840 was restraining, and confined to instruments for conveyance of estates of inheritance or freehold or for a term of more than

## No. XXIV.

### WM. L. HALL v. T. J. ALLCORN.

(See Note 24.)

*Appeal from Brazoria County.*

HEMPHILL, CHIEF JUSTICE.—This was an action brought by the appellee on a note of hand of which the following is a copy: "$2260. On or before the twenty-sixth of February next, 1838, we promise to pay Thomas J. Allcorn, administrator of the succession of Elijah Caple, deceased, or bearer, two thousand two hundred and sixty dollars, in good current bank notes, being the amount of property purchased by Andrew Robinson, at the sale of the effects of the said estate, on the 26th of August, in conformity with a decree of the honorable judge of probate in and for the county of Harrisburg. (Signed) A. Robinson, Jr., Wm. Barrett, T. J. Hall, Wm. Sims Hall. Live Oak District, September 6, 1837."

Judgment was rendered against the defendants, *"and each of them,* jointly and severally, for the sum of two thousand two hundred and sixty dollars," or the entire amount of the note sued on. An appeal has been taken therefrom, and we are asked to reverse the same on the ground that the note on which the suit is brought is an obligation by which each one who bound himself was bound only for his equal portion thereof and the judgment is rendered against them, jointly and severally, each one for the whole.

At the period of the execution of this note the laws of Spain were the common law of this country and afforded the rule by which this contract must be regulated. The question then arises whether this would be considered under that system of laws as a joint obligation or one in solido. For all the purposes of this cause it will be sufficient to define a joint obligation (under the laws which formerly governed the country) to be one where several persons join in one contract to do the same thing; and an obligation in solido to be one where several persons obligate themselves by the term in solido, or other expressions which clearly show that they intend that each one shall be bound to perform the whole of the obligation. The laws of Louisiana are analogous to those of our own system on this subject, and the decisions of their tribunals may justly be regarded as entitled to high consideration.

It is an established principle in both systems that solidarity is never

---

five years, and the intent to seal was sufficient, if expressed in any part of the instrument not within the purview of this section. English v. Helms, 4 T., 228; Clayton v. Pridgen, 8 T., 308; Conner v. Autrey, 18 T., 427; Muckleroy v. Bethany, 23 T., 163; Muckleroy v. Bethany, 27 T., 551; Richarz v. Wolcken, 34 T., 102. Under Act of 1840, contracts to transfer land certificates and headright claims, were not required to be under seal. Randon v. Barton, 4 T., 289; Bledsoe v. Cains, 10 T., 455. It was not necessary for an obligation to pay money, nor its assignment, to be under seal. Durst v. Swift, 11 T., 273; Jones v. Holliday, 11 T., 412; Holman v. Criswell, 13 T., 38. Nor was it

to be presumed. See 12 Martin, 316. And it is equally well established that the words in a note or obligation, "we promise," make a joint obligation and not one in solido. See Mayor and Alderman v. Ripley, 5 La., 122; 3 La., 596, 597. The rule of law in relation to obligations of this description is expressed by a Spanish authority in the following terms: "Where two persons are bound simply or severally (simplemente), each is considered only bound for the half, unless it shall be expressed that they have bound themselves in solidum, and each separately; for then each may be sued for the whole. See 1 White's Recopilacion, p. 152.

On consideration of the same principles of law, and the authorities referred to, it is manifest that the judgment of the court below is erroneous. Instead of being in solido, or against each of the defendants separately for the whole amount of the note, it should have been entered for his respective share thereof.

It is therefore ordered and decreed that the judgment of the court below be reversed and set aside; and this court proceeding to render the judgment which should have been entered by the court below, it is ordered and decreed by this court that the plaintiff recover of each of the said defendants his respective and equal share of the said obligation, with interest on the said portion as the law directs, and the appellant recover his costs expended in this court.

*Reversed and rendered.*

## No. XXV.

## H. AUSTIN v. W. C. WHITE & Co.

### (See Note 25.)

*Appeal from Brazoria County.*

HUTCHINSON, JUSTICE.—Austin filed his petition or bill against White & Co., alleging that on May 4, 1840, they recovered in the court below, against him, $410.09, with costs; that execution thereon issued; that Austin designated to the sheriff 500 acres of land worth $2 per acre, and 1000 acres of land more, to be taken in execution according to the Act of January 26, 1839, section 4; that the sheriff thereupon illegally levied also on 3328 acres more, not designated; that he advertised the whole for sale on twenty-nine days' notice, which notice was of the 9th of June; that the obligation was made in view of a sale on thirty days' notice according to that act; that nevertheless the sheriff was about to proceed under the Act of February 5, 1840, allowing a sale on twenty days' notice, contrary to the Constitution; wherefore, the bill prays an injunc-

---

necessary for a contract to sell land to be under seal. Miller v. Alexander, 8 T., 36; Holman v. Criswell, 13 T., 38; Fisk v. Miller, 13 T., 224; Eckhart v. Reidel, 16 T., 62; Martin v. Weyman, 26 T., 460; Courand v. Vollmer, 31 T., 397; Wright v. Lancaster, 48 T., 250, 256; Downs v. Porter, 54 T., 59, 64. A deed without seal or scroll was admissible in evidence to show equitable title in vendee, and deed was entitled to record under section 7 of Act of 1840.

tion, etc. The injunction was granted; but at October term, 1840, the court dissolved the injunction and decreed the costs against the plaintiff.

This decree was in effect definite. Whether the subject matter of complaint was cognizable in chancery, or on the contrary was more properly the object of the action of the court in the common form by supersedeas, whereby the court might not only correct errors in its final process, but control illegal or oppressive proceedings of its sheriff, need not be here decided; for taking the matter to be cognizable in equity, it is not sufficient to justify an injunction. It was competent for Congress to alter the remedy, as was done by the Act of 1840, prescribing twenty instead of thirty days' notice for an execution sale. The clause in the Constitution referred to in the bill is in no degree invaded or violated. The laws of the land existing at the date of a contract do not enter into the contract so as to form portion and essence of it, but will be the criterion to define its scope and obligation. Its obligation is to do, or forbear, according to the engagement or stipulation. The remedy to redress a breach of it in force at its date may be altered or modified according to the will of the Legislature, so that a full remedy of some sort be provided. This doctrine is so well established as to render a reference to authority superfluous.

The bill only intimates a step *toward* oppression in the officer—an excessive levy on lands—and the relief sought is to limit him to a less quantity. We can not now know that the officer at the sale would have contravened the law. The law and his oath to observe it require him to sell each tract separately until satisfaction is obtained; and we can not anticipate that he would have violated those sanctions.

This cause coming on to be heard on the transcript of the record herein in the District Court of Brazoria, and it being inspected, because it seems to the court here that there is no error in the decree below, it is therefore considered by the court here that the same be affirmed; and that the appellees recover of the appellant their costs in this court expended.

*Affirmed.*

### No. XXVI.

### WARREN D. C. HALL v. JAMES A. E. PHELPS.

#### (See Note 26.)

*Appeal from Brazoria County.*

HUTCHINSON, JUSTICE.—On the 23d July, 1838, Phelps instituted suit against Hall. In his petition, it as alleged that on the 16th August, 1824, a grant issued to him from the Mexican government for a league of land called the Orozimbo league, on the west bank of the

though not under seal. Miller v. Alexander, 8 T., 36; Saunders v. Hartwell, 61 T., 679, 686; Tom v. Sayers, 64 T., 339; Frost v. Wolf, 77 T., 455. Act of February 3, 1841 (Gammel's Laws of Texas, vol. 2, p. 608), providing that "when a husband and his wife have sealed," etc., was not applicable to sales of personal property. Stooksberry v. Swann, 12 T. C. A., 66, 73. Act of Feb-

Brazos, being number 3 above the league of Martin Varner; that thereon he erected a dwelling, tenements and improvements, occupying it with his family, composed of himself, a wife, children and slaves, and cultivating the same until August, 1831—having in all things performed the conditions of the grant to him as a colonist; that on the 13th of that month, being himself absent with his wife on a visit to a child in the United States, having left his slaves and his overseer in full possession, Hall, with violence and without any right or authority, expelled the overseer and the slaves from the dwelling and tenements they occupied, driving them to some distant huts on the land; and about the 6th of the November following he in like manner drove them wholly from the land, putting out of the inclosures the household furniture, etc., leaving the same to be wasted and destroyed, and took entire possession of the dwelling, tenements and premises, and continued with force to occupy until March following; that meantime Phelps returned, sought restoration of his estate, but it was withheld until after an agreement was extorted from him to convey 1000 acres on the lower part of the league, in consideration of being restored to possession of the residue—and also a conveyance of the 1000 acres accordingly. Such is an outline of the prolonged injury, which is circumstantially stated in the petition. It is averred that owing to the distracted condition of the country in regard to the administration of justice, and the revolution that intervened, the suit had been delayed. General damages for the tortious consumption, injury and destruction of personal property and the provender of the crop of 1832, are demanded; and it is prayed that the deed for the 1000 acres may be brought in and canceled and plaintiff quieted, etc.

On the 18th of March, 1840, Hall answered, demurring to the petition for multiplicity of demands, etc., denying generally the injuries charged, and stating in regard to the conveyance: "He denies having used force or violence to compel or induce the plaintiff to execute the deed which is prayed to be canceled; on the contrary he alleges that the said deed was made and executed for a good and valid consideration." And it concludes with the plea of prescription. The answer was not verified.

The cause was tried and heard on the —— day of October, 1840. A jury found that the defendant entered on the premises of the plaintiff without any title in law or warrant of authority from the plaintiff; that the plaintiff, with a view to be restored to possession, gave up one portion of his land to get possession of the other portion, and that the title of the plaintiff was genuine. On the trial, the defendant's counsel

ruary 2, 1858 (Gammel's Laws of Texas, vol. 4, p. 968), dispensed with the use of seals on all private instruments, except contracts of corporations. This statute, with the amendment of April 28, 1873 (Gammel's Laws of Texas, vol. 7, p. 503), constitute Rev. Stats., 1895, art. 4862. Harris v. Cato, 26 T., 338; Wimbish v. Holt, 26 T., 673; Read v. Levy, 30 T., 738; Courand v. Vollmer, 31 T., 397; Bernhard v. De Forrest, 36 T., 518; Clayton v. Mooring, 42 T., 182. Under the statute of 1858 and the present law, the following instruments are valid without seal: (a) Appeal bonds. Russell v. McCampbell, 29 T., 31; Read v. Levy, 30 T., 738; Hart v. Kanady, 33 T., 720; Boney v. Waterhouse, 35 T., 178. (b) Attachment bonds. Bernhard v. De Forrest, 36 T., 518 (overruling Read v. Levy, 30 T., 738; Courand v. Vollmer, 31 T., 397;

moved that the jury should be instructed: 1. If they believed the parties compromised their difficulties and settled the same, they should find for the defendant. 2. If they believed the deed to defendant was made without force or threats, they should find for the defendant as to the deed. 3. If they believed that after the alleged force, etc., the parties settled their matters and lived together amicably, they should find for the defendant. 4. Even if force were used at first, still if the plaintiff, when not under its influence, complied with his contract, he could not recover back the thing sold or given. These the court refused to give, but charged the jury, if they believed the defendant entered on the premises without any title in law or warrant of authority from the plaintiff, and that he, with a view to be restored to possession, gave up one portion of his land to get back the other, they might declare the title so made as void; that they should determine from the evidence, if this had been such a case; that if they believed the defendant had a doubtful claim to the league granted to plaintiff, they might find for the defendant; but to come to that conclusion they should be satisfied the defendant had more than a shadow of title; and that if they believed the defendant's entry on the land was without any right to enter, they might find such damages as the evidence warranted. The court after the verdict proceeded to make a decree. After giving in that decree a summary of the proofs and evidence, it was adjudged that the deed for 1000 acres be null and void, and be delivered by the defendant to the sheriff of Brazoria County, to be brought into court and canceled; that the defendant should be enjoined from ever disturbing the plaintiff in his possession of the league of land, and that the plaintiff recover his costs.

The evidence, whether documentary or ore tenus, is moreover spread on the transcript, and because it so fully sustains the petition, verdict and decree, it would be useless to quote it, but we will proceed at once to notice the grounds for reversal urged by the appellant's counsel.

1. It is contended that the deed of January 12, 1832, prayed to be canceled, should have been produced, or its absence accounted for, as a basis for proof of its contents; there being no proof to show the consideration of the deed. This position is untenable. The chief object of the suit was to nullify the deed as an instrument illegally extorted from the plaintiff and as being in the hands of the defendant, liable to be used by him injuriously to the plaintiff, who so far from needing it as a memorial of any right he claimed, reprobated it as inherently vicious and cast himself upon the court to protect him against it. Had it been

---

Hart v. Kanady, 33 T., 720); Gasquet v. Collins, 57 T., 340. (c) Certiorari and sequestration bonds. Courand v. Vollmer, 31 T., 397; Clayton v. Mooring, 42 T., 182; Tompkins v. Toland, 46 T., 584. (d) Appointment of substitute trustee. Jacobs v. Mildred, 53 T., 72; Cheveral v. McCormick, 58 T., 440. (e) Official bond of county treasurer and county scrip. De Wees v. Colorado County, 32 T., 570; Parker County v. Courts, 2 U. C., 398. Written contracts of corporations should be under corporate seal, but the ancient and technical rule that a corporation could act and speak only by its corporate seal is obsolete with us. Shropshire v. Behrens, 77 T., 275; Gas Co. v. Harber, 1 App. C., sec. 1123. Where an agent makes a contract under seal, without disclosing his agency, the party with whom he contracts can not elect to hold

useful to him as evidence, he would have been required to have notified
the adverse party to produce it.  The title sought to be protected by it
was assailed by the petition; and if the paper contained anything fa-
vorable to the defendant, he could have used it as defensive proof.  Its
existence, and the land on which it was expected to operate, were alike
admitted in the answer; and by that answer the question was raised, if it
was for a good or valid consideration.  Now what was the consideration
of that deed?  The answer is that it was a good and valid one; but what
sort of consideration is not intimated.  Let it be repeated that the de-
fendant did not afford to the answer the verification of an oath.  He had
not such temerity.  We are to look into the volume of proof sent up to
find why, on what cause, that deed was made.  We are not left to *pre-
sume* that the verdict was correct.  Hall, availing of the temporary ab-
sence of Phelps and his wife on a visit to their child, in the spirit and
with the hand of rapacity, took possession of the domicile and soil which
the unsuspecting and confiding Phelps had acquired by the enterprise
and privations of years and trusted would be kept inviolate to receive
him on his return.  Let it not be imagined that we will descend into the
detail of the continued outrage inflicted.  It will be enough to remark
that he, in his own audacious words, *reigned sole possessor* of the usurped
manor and premises, affecting all the power and vaunted hospitality of
a successful marauder of the dark ages, until the deed was signed and
delivered, and thereafter, until it pleased him to depart!  He invited
Phelps to the board and the hearth he had taken from him in his absence
and with strong hand—a possession he declared he would retain at the
cost of life and upon his own principles.  He did retain it, until what is
called a compromise of a doubtful right was extorted.  The deed was
given by the oppressed Phelps solely as an expedient, and the only avail-
able one, apart from superior force, in the then condition of the country,
whereby to find on his own dominion a shelter for himself and family.
We are not to decide according to the nerves or tears of a party; but we
may be allowed to say that chivalry and outrage have never been regarded
as affiliated.  The agreement and bond of December 27, 1831, and the
pretended deed of January 12, 1832, were alike extorted.  The usurpa-
tion continued until in March following.  We are reluctant to assert any
principle containing the boundaries within which a transaction, in its
incipiency tortious or void, may be validated by a subsequent deliberate
act of the victim; for whenever the law sets up its definitions, the craft
and cupidity of man too soon become prepared to fill up the picture, so as

---

the undisclosed principal upon the contract.  This principle is not changed
by our statute.  Rev. Stats., 1895, art. 4862; Sanger v. Warren, 91 T., 472.
A contrary rule seems to be announced in Rutherford v. Montgomery, 14 T.
C. A., 319, 323.

**Note 17.**—Ex parte Colin De Bland, p. 406.

Quo warranto is a legal proceeding by the State to determine the right
of an office or franchise, and to oust or forfeit.  As a general rule, it can
only be sued out in the name of the State by its prosecuting officer.  It is
also used to ascertain whether an individual has authority to exercise official
functions.  Ex parte Colin De Bland, Dal., 406; Bradley v. McCrabb, Dal.,

to escape its penalties  It is sufficient in this case, after rendering due
acknowledgment of the zeal and talent exhibited in the argument, to
declare that what is primarily flagitious can only be cured by voluntary
or adjudicated recompense.  In manifold instances, what is begun prop-
erly but afterwards turned into enormity, or covin, becomes vicious from
the beginning.  The oppression here was one consisting of a series of
trespasses and extending beyond the procurement of the conveyance.  It
was not so urged, but yet we consider Phelps as being harassed, pressed
and overcome; not indeed by manual force, but still by a force equally
lawless and more to be reprehended because of its effrontery and long
continuance.  It was whilst he was under this duress that the conveyance
originated.  Between the mockery of the agreement in which Hall pre-
tended to relinquish his right—as if he had any to relinquish!—and the
deed, where was the time or place to Phelps to repent or retract?  At no
moment was he free to do so, for the incubus remained.  We feel bound
by a solemn sense of duty to admonish the communities of this Republic
to discountenance by every peaceable and lawful means the repetition
of such conduct, and to be at least assured that if it be re-enacted and
brought into the judicial tribunals, it will be visited with the utmost
measure of retributive and corrective justice.

2.  It has been urged that the court below erred in charging the jury
in this, that there might have been, according to the evidence, a compro-
mise of a doubtful right, and the instructions were calculated to prevent
a proper verdict on that ground.  We have examined the evidence in vain
to collect any such state of fact, as would have justified any reference by
the court in its instructions in regard to the rule as to such a compro-
mise.  The charges refused, when connected with those given to the jury,
were well calculated to fix the minds of the jury upon any and every pos-
sible ground of defense to the defendant.  The court did, in effect,
instruct them to find for him if they believed the deed grew out of such
a compromise, provided it was on something more than a mere shadow
of right on the part of Hall; and this we esteem as having been more in
his favor than the court, from the evidence, was bound to give.  It is
true, as established by the books, that a compromise of a doubtful right
will be sustained if the parties act on a full knowledge of the facts, for
it is upon the doubt as to the right that they act, and the law favors what
prevents litigation.  This principle is in perfect harmony with the inter-
esting doctrine that an injured party, whose loss or injury arises out of
his act or agreement made when he was ignorant of his rights or mistook

504; Wright v. Allen, 2 T., 158; State v. S. P. Ry. Co., 24 T., 80; Grant v.
Chambers, 34 T., 573; Brennan v. Weatherford, 53 T., 330; State v. De Gress,
53 T., 387; Farmer v. State, 69 T., 561; Wallace v. Anderson, 5 Wheat., 291;
Territory v. Lockwood, 3 Wall., 236.  An individual may make the relation
on which the State's officer files the information.  In such cases the proceed-
ings are in the exclusive control of the State's officer, and can not be dis-
missed by the relator.  Banton v. Wilson, 4 T., 400; Mathews v. State, 82 T.,
577; McClesky v. State, 4 T. C. A., 322.  If relator has no interest, court may
refuse to allow the information to be filed, or dismiss it.  Deaver v. State, 27
T. C. A., 453.  Can not be used as a remedy by a stockholder of a corporation.
State v. R. G. Ry., 41 T., 217.  Quo warranto is a proper proceeding to try

the law, may allege that ignorance or mistake as a ground of relief—if the adverse party can not in conscience retain the advantage he has gained—and if, too, the error or ignorance can be shown clearly by proof aliunde. The late Chancellor Kent and a few others have contravened this doctrine; but it stands supported by the current of the most celebrated jurists and judges. It does not, however, appear that there was in the transaction before us, any misapprehension of rights or of the laws; but on the contrary, its remarkable feature is a most willful and deliberate violation of the laws on the part of the defendant, and a full appreciation of the wrong by the plaintiff.

The ground on which the appellee's counsel has treated the conveyance as invalid may be applied. If one receive from another a price for abstaining from the commission of an act which he was bound by law not to commit, he will be compelled to restore the price; or if he had only received a promise, then to release the obligor from it; it being esteemed very base to receive a price for doing what the law compelled him to do. 2 Partidas, 941; 2 Pothier, 28. This is sound morals; and the common law, though not to be the rule of decision in this case, holds the same principle for the conveyance has no shadow of a valid consideration to support it. If here Phelps had acted in ignorance of the law that bound Hall to restore the premises, and had acted under the name and solemnity even of a compromise, equity, which is derived from the civil law and the fountains of universal justice, would have relieved him. 2 Story's Equity, 134.

3. Prescription is invoked to shield the defendant. The deed was procured on the 12th January, 1832, and the suit instituted on the 23d July, 1838, a period of more than six years. The conveyance was only an evidence or muniment of title to a part of the immovable Orozimbo league, and the suit is as well to cancel that as to be quieted in the possession of the whole league. It is therefore more analogous to the action to try titles than any other; and indeed the defendant's title is directly put into controversy, so that the limitation of ten, instead of four or three years, seems most applicable. But under what system of jurisprudence will a court, when proceeding upon the principles of equity, apply to an equitable demand the limitations of legal remedies, stricti juris? Statutes, or laws of prescription or limitation, are adopted in chancery by way of analogy, but yet under such rules and restrictions as that court deems compatible with equity, and hence in transaction of express trust, in such as originated in fraud and much more in those growing out of oppression, the bar is not allowed to intervene. It would be interesting to notice more in detail the civil and English chancery law upon these subjects,

---

title to an office, but it has always been regarded by our courts as only a cumulative remedy. Bradley v. McCrabb, Dal., 504; Wright v. Allen, 2 T., 158; State v. Cooke, 54 T., 482; Flatan v. State, 56 T., 93; Watts v. State, 61 T., 184; State v. Jennett, 63 T., 261; McAllen v. Rhodes, 65 T., 348; Fowler v. State, 68 T., 30; Williams v. State, 69 T., 368; Livingston v. State, 70 T., 393; State v. De Gress, 72 T., 242; Hunnicut v. State, 75 T., 233. The term "franchise" used in Act of July 9, 1879 (Gammel's Laws of Texas, vol. 9, p. 75), Rev. Stats., 1895, art. 4347, regulating quo warranto proceedings, applies

and the accordance of both system upon them; but it is not called for. The court considers it indispensable to notice the districted state of Texas from 1832 to 1835, and the revolution that occurred, as raising a sufficient ground to prevent the bar here invoked.

4. The last position is that conveyance was promised, and even if that promise had been made through force or fear, it was afterward performed, and so the conveyance will be supported. This would have been correct, if at the conveyance Phelps had acted not only in full knowledge of the facts and of his rights, and had been perfectly free to do or not to do what he did; but the record does not present him in that disenthralled position.

This cause coming to be heard on the transcript of the record herein in the District Court of Brazoria, and it being inspected and the arguments of counsel heard, because it seems to the court that there is no error, it is therefore ordered and decreed by the court here, that the decree of the court below be in all things affirmed; that the appellee recover of the appellant the costs by him in this behalf in this court expended, and that this affirmance be certified below for execution.

*Affirmed.*

## No. XXVII.

### MCKINNEY & WILLIAMS V. T. C. BRADBURY, ADMINISTRATOR.

#### (See Note 27.)

*Appeal from Brazoria County.*

HANSFORD, JUSTICE.—This action was commenced in the District Court of Brazoria by the appellees—"trading together as merchants and partners, under the firm and style of Cole & Cogley," on an account stated, for the sum of $6414.75 against "McKinney and Williams, merchants and partners," of the same county, "trading under the firm and style of McKinney & Williams." The petition, which is in the usual form, with the account annexed, concludes with a prayer "for debt, interest, cost and damages." The answer denies all and singular the allegations of the petitioners and prays judgment for costs; and for further answer alleges that the petitioners were indebted to them in the sum of $6506.39 by account exhibited, and "prays judgment for the same with interest and costs." Upon the issue joined, a trial was had at the fall term of the District Court for Brazoria County, and judgment rendered

---

only to franchises of corporations. State v. Smith, 55 T., 447; I. & G. N. Ry. v State, 75 T., 356. County and district attorneys can not institute quo warranto proceedings to forfeit charter of corporation. Rev. Stats., 1895, art. 4343, in so far as it attempts to confer such power, is unconstitutional. Such proceedings must be brought by the Attorney-General. Constitution, art. 4, sec. 22; State v. Paris Ry., 55 T., 76; State v. Moore, 57 T., 307; State v. I. & G. N. Ry., 89 T., 562; also see State v. S. P. Ry., 24 T., 80; State v. R. G. Ry., 41 T., 217. A contrary rule seems to be held in Morris v. State, 62 T., 728, but it is distinguishable from the other cases, in that the suit was to oust from use of a franchise not authorized by law—may be filed by district attor-

against McKinney & Williams for $4217.87, from which they appealed. There was also a motion in the court below to set aside the verdict and for a new trial, on the following grounds: 1. That the jury misconceived the evidence. 2. There was a mistake in the rendition of the verdict. 3. The verdict was contrary to law and evidence. 4. The defendants were surprised by the testimony relative to the order, or paper, spoken of by one of the witnesses. This last ground was supported by affidavit. The motion after argument was overruled and a new trial refused.

The statement of facts—as agreed on by the parties and certified by the judge—recites, that the appellants admitted the account of the plaintiff, and the appellee admitted the account of the defendants, except $3500 charged by the defendants against the plaintiffs for charter of steamboat Laura. The witness Welsh stated that the boat of McKinney & Williams, the Laura, was chartered by Cogley, one of the firm of Cole & Cogley, to go from Quintana to the mouth of the Sabine river. That after making the charter, Cogley gave an order, or draft on paper, for the amount of the charter, leaving the amount indefinite, and instructing them to furnish the defendants from time to time with what they might want, and that such articles as were demanded by defendants were furnished by Cole & Cogley. The witness was clerk for defendants, but did not know for what purpose the boat was chartered, or whether it was for the benefit of Cole & Cogley or not. There was no direct proof that the contract of charter was a partnership transaction. The court charged the jury that if they believed that the charter was a partnership transaction they would allow the offset.

The court very properly ruled that common report was inadmissible to be given in evidence in the issue joined, and with equal propriety rejected proof of the contents of a written instrument, without its loss, or its possession by the adversary, being first legally established.

The charge of the judge was evidently too general and too indefinite. It embraced a mixed question of law and fact. In civil cases, the law is properly confided to the court and the facts to the jury. To the legal abilities and the discriminating judgment of the court has been wisely committed the more difficult task of expounding the law to the jury; and to the judgment of twelve honest men, however unlearned, that of finding the facts and applying the law, under the charge of the court, to the facts thus found. It is when each are confined within the limits of its respective sphere as established by the Constitution and

ney pro tem. Fowler v. State, 68 T., 30; Davis v. State, 75 T., 420; Little v. State, 75 T., 616; Bell v. Faulkner, 84 T., 187, 189; Dean v. State, 88 T., 290; State v. Thompson, 10 T. C. A., 272; Hanscom v. State, 10 T. C. A., 638; Hussey v. Heim, 17 T. C. A., 153; Gray v. State, 19 T. C. A., 521; Quintanilla v. State, 23 T. C. A., 479. Though the State may appeal without bond, the costs should be taxed against the relator, not the State. Hussey v. Heim, 17 T. C. A., 153; State v. Broach (T. C. A.), U. R. C., 1896. It does not lie when there is no question as to the right to the office, to question right of officer to do an act or restrain him from exercising a privilege incident to his office. State v. Smith, 55 T., 447. Nor to oust an officer for bribery until conviction. State v. Humphries, 74 T., 466. Nor to revise decision of city

laws, and in strict conformity also with the great landmarks of that science which has been justly called the perfection of "human reason," and the maxims and rules of which constitute the most stupendous fabric of intellectual grandeur ever reared by the mind of man, that the boasted trial by jury can be properly appreciated. The court should have charged the jury what constituted, in law, a partnership, and then left the jury to find the facts and apply those facts to the law. Is it to be expected that the yeomanry of the country, who must always constitute our juries, can decide what acts of one member of a firm are binding in law upon that firm? This would indeed be requiring of twelve men, uneducated in the first principles of the law, to decide upon questions in one of the most difficult branches of the most difficult science that has ever occupied the cogitations of the human understanding. And although we can not say, in the language of the defendants' motion for a new trial, "that the jury misconstrued the evidence," we will say, that having been improperly employed in the function that belonged alone to the court—that of deciding what act in law of one partner was binding upon all—they "misconceived" the law, as they must generally do whenever the task of expounding it is committed to such unskilful hands. It was error then in the court below to so charge the jury, and the result was a verdict contrary to law and evidence.

Now let it be admitted for the sake of argument that Cogley chartered the steamer Laura for his own individual use and on his own private account; it is an allegation that could only properly be made by the plaintiffs, and on them and not upon the defendants rested the onus probandi. By a well settled rule of practice, as old as the law itself, the party making an averment must show that the allegata and the probata must correspond. And even in that case it would not be sufficient, if the transaction was of a character fairly within the range of the commercial transactions of the firm, unless a knowledge of the fact is brought home to the defendants by proof, and that they extended to Cogley the credit upon his own individual capacity. And supposing too that it was a private transaction of this character (and it is a supposition at war with the whole tenor of admissions of the parties and the evidence in the cause), yet subsequent to that transaction and in liquidation of the debt which had accrued upon the charter of the Laura, we find the firm of Cole & Cogley furnishing the defendants, in the language of the witness Welsh, "what things they wanted from time to time;" thus recognizing by their acts, and ratifying by their compliance with the stipulations of Cogley, the debt which had accrued upon the contract of charter, as a debt due by the firm. It is true that the articles

council as to eligibility of candidate for municipal office. Seay v. Hunt, 55 T., 545; Krakauer v. Kaples, 5 T. C. A., 264. Nor by public weigher against a private weigher. Watts v. State, 61 T., 184. It does not lie to forfeit franchise, except for causes declared by statute. State v. R. G. Ry., 41 T., 217; Morris & Cummings v. State, 65 T., 53. It lies against the enjoyment of a franchise granted either by State or municipal legislation, when the power to grant did not exist; and the legality of the corporation may be called in

thus furnished the defendants from time to time are attempted to be placed to account of the defendants as a running account with reference to the charter party; yet we think the plaintiffs in this attempt have wholly failed.

But although we have admitted for the sake of argument that Cogley chartered the boat for his own use and on his individual credit, we do not believe that he did. We can not believe it in the absence of all testimony. And the rule of law is, that "if the partnership is admitted, the act of each of the partners, in transactions relating to the partnership, is considered the act of all and binds all. The act of one of the partners, though on his private account and contrary to the private arrangement among themselves, will bind all parties, if made without knowledge in the other party of the arrangement and in a matter which, according to the usual course of dealing, has reference to the business transacted by the firm." Kent's Com., p. 41; Hope v. Cust, 1 East, 53; Swan v. Steele, 7 East, 210; Le Roy, Bayard & Co. v. Johnson, 2 Pet., 186.

The books abound with numerous and subtle distinctions on the subject of the extent of the power of one partner to bind the company, and we shall not attempt to do more than select the leading rules and give a general analysis of the case upon this point. If a bill or note be drawn by one partner in his own name only and upon the firm of which he is a partner, on partnership account, the act of drawing has been held to amount, in judge of law, to an acceptance of the bill by the drawer in behalf of the firm, and to bind the firm, as an accepted bill. And even if the paper was made in a case which in its nature was not a partnership transaction, yet it will bind the firm, if it was made in the name of the firm, and there be evidence that it was done under its express or implied sanction. Kent's Com., p. 41; Vesey, p. 602.

It is no matter with what fraudulent views goods are purchased by one partner, or to what purposes he may apply them, it is binding on the firm if the seller be clear of the imputation of collusion. 3 Kent, p. 45. In the case of Doty v. Bates it was held, upon good authority too, that the partnership being admitted, the presumption of law is that a note made by one partner in the name of the firm, in the regular course of partnership dealings, is for the benefit of all the parties and binding on the firm until the contrary be shown. 11 Johns., 546. There is no question as to the rule that if a person take a partnership security from one of the partners, for what is known at the time to be a particular

question by quo warranto in an action involving the right of an officer to do an act under the charter. Morris & Cummings v. State, 62 T., 728; State v. Goowin, 69 T., 55; Furrh v. State, 6 T. C. A., 221. It lies to test validity of a municipal or quasi municipal incorporation. State v. Dunson, 71 T., 65; East Dallas v. State, 73 T., 370; State v. Eidson, 76 T., 302; Ewing v. State, 81 T., 172; Mathews v. State, 82 T., 577; State v. Wofford, 90 T., 514. In such cases laches can not be imputed to the State. State v. Wofford, 90 T., 514; Troutman v. McClesky, 7 T. C. A., 561. It is not a means to compel a person or corporation to carry out contracts. It is used to forfeit, not to suspend a franchise; to reclaim a privilege, not to punish for breach of con-

debt of the partner who gives such security, the partnership is not. holden. Livingston v. Hasting, 2 Cam. Rep., 246. But this is matter of defense and must be proved by the party who wishes to take advantage of it. 11 Johns., 547. But in the case under consideration we do not find, in the statement of facts, any evidence on the part of the appellees to establish this point. The charter party was proven; the time the boat was employed under that contract and the value of the services was fully established; and the rule made it incumbent upon the appellees, by way of defense to the appellants' cross action of set-off, to establish that fact before the set-off could be barred. From all that has been said we think that it is clear, upon a fair and ample inspection of the transcript of the record of the trial of this cause in the court below, that the jury was misled by the vague and uncertain charge of the judge, and that the verdict was contrary to law and evidence. And if any doubt could be entertained of the sufficiency of the evidence to have justified the jury in allowing the offset for $3500 upon the contract of charter for the steamer Laura (and we could wish that the facts were more definite on that particular point), yet no doubt can be entertained that it was illegal for the jury to have allowed interest. We speak not now of the excess of interest, which was remitted by the plaintiffs' counsel, of $849.01— the mistake of the jury in the rendition of their verdict; but we speak of the illegality of finding interest at all; because it is certain that we may search in vain for the law in force in this Republic that does in any manner authorize any such finding. 8 La., 11 Id., 520.

Upon a review, then, of all the facts and the law arising in this cause, we are of the opinion that it was error in the court below to refuse a new trial; and it is therefore considered by the court here that the judgment of the court below be reversed, and that this cause be remanded and a venire de novo be awarded, and a new trial had, and that the appellants recover of the appellee their costs in this court expended.

*Reversed and remanded.*

## No. XXVIII.

### H. AUSTIN v. F. A. SAWYER.

*Appeal from Brazoria County.*

SCURRY, JUSTICE.—This case turns purely upon the facts. It appears from the record that Austin exhibited his petition praying for relief

---

tract. Morris & Cummings v. Schooner Leona, 67 T., 303. Though quo warranto is in form analogous to a criminal prosecution, the remedy is civil in nature. State v. De Gress, 53 T., 387; Davis v. State, 75 T., 420; Buckler v. Turbeville, 17 T. C. A., 120; Ames v. Kansas, 111 U. S., 449; Foster v. Kansas, 112 U. S., 201.

Note 18.—Republic v. Smith, p. 407.
Appeal is a matter of right guaranteed by the Constitution. Forbes v. Hill, Dal., 486; Bradley v. McCrabb, Dal., 504; Smyrl v. State, 40 T., 121; Eppstein v. Holmes, 64 T., 560; Cornelius v. City of Dallas, 37 T. Cr., 309.

against a judgment recovered against him at the October term, 1837, of the District Court for the County of Brazoria, and obtained an injunction in accordance with the prayer.

From the testimony in this case, it seems that one Robert Stevenson, administrator of the estate of Allen Reynolds, deceased, presented his petition to the probate court of Brazoria County, in which he represented that he had a claim against the estate of A. G. Reynolds, deceased, of which the said Sawyer was then acting as administrator, for the sum of $800, and at the March term of said probate court, 1838, the said claim was allowed by the court, to be paid by preference and privilege out of the proceeds of a league of land lying on Hall's Bayou, and sold by the defendant, Sawyer, as administrator to the said H. Austin, with a stay of six months.

At the October term of the district court, 1839, it seems that Sawyer recovered a judgment, as administrator of the estate of A. G. Reynolds, deceased, against Henry Austin for the sum of $4010, interest and costs of suit; and it was to enjoin the execution upon the said judgment that the bill which is the foundation of this action was exhibited, showing that Sawyer, as administrator of A. G. Reynolds, deceased, had received of Austin the sum of $850, as appears by receipt bearing date 28th August, 1838.

The court below perpetuated the injunction as to $820 and taxed the defendant with the costs, and decided that there was no lien upon the property. From this decision both parties appealed.

It is the opinion of this court that the opinion of the court below be affirmed. The privilege debt, or lien, given to Stevenson, administrator of Allen Reynolds, deceased, by the probate court of Brazoria County, only extended against the debt due from Austin to Sawyer, as administrator of A. G. Reynolds, deceased; and the court can not look upon the facts in any other light; but they are brought to the conclusion that the said privilege debt was discharged by Austin at the time Sawyer executed his receipt to him for the sum of $850.

The court is of opinion that the court below did right in allowing the credit and declaring that there was no subsisting lien outstanding against the property.

It is therefore the opinion of the court that the opinion of the court below be affirmed with all costs.

*Affirmed.*

---

Where the Legislature has failed to provide a mode of appeal, the court may establish one. Wheeler v. State, 8 T., 228; Teas v. Robinson, 11 T., 774; Tucker v. Anderson, 25 T. Supp., 155; Simmons v. Fisher, 46 T., 126; Bishop v. State, 43 T., 390. With us writ of error and appeal are concurrent modes of appealing. Andrews v. Andrews, Dal., 427; Magee v. Chadoin, 44 T., 488.

**Note 19.**—Republic v. Laughlin, p. 412.

As a general rule appellate courts only have appellate jurisdiction and powers incident thereto. Bailey v. Haddy, Dal., 376; Nash v. Republic, Dal., 631; Dewees v. Hudgeons, 1 T., 192; Chambers v. Hodges, 3 T., 517; Burke v. Mathews, 37 T., 73; City of Brownsville v. Basse, 43 T., 440; Bennett v. Waddell, 54 T., 273; Walls v. Marshall, 62 T., 28; Darnell v. Lyon, 85 T., 455. It is within the power of appellate courts to devise means to enforce their

## No. XXIX.

### HENRY AUSTIN v. EDMUND ANDREWS, ADMINISTRATOR.

#### (See Note 28.)

*Appeal from Brazoria County.*

BAYLOR, JUSTICE.—In this case the appellant, Austin, obtained an injunction enjoining an execution sued out against his property on a twelve months' bond, as it is commonly called.

On a motion to dissolve the injunction for want of equity, the facts agreed on by the counsel of the parties are as follows: "The original judgment in the court below of Andrews, administrator, etc., v. Austin, was founded on a note bearing date the 24th of November, A. D. 1836, and it was admitted at that time, and also at the maturity of the note, there could be no forced sale by a creditor of the property of his debtor for less than two-thirds of its appraised valuation. The property of Austin was levied on and offered for sale, but not selling for two-thirds of its valuation, it was sold on a credit of twelve months, under the act of Congress of January 26, 1839, and was bought in by Austin's agent; bond was given pursuant to the act of Congress above mentioned; at the maturity of the twelve months' bond, the money not being paid, execution was sued out on it, and an injunction was obtained enjoining this execution.

"The district judge sustained the motion to dissolve the injunction, and decreed that the complainant, Austin, should pay the costs," etc.

From this decree Austin appealed, and assigns for error:

1. That the law in force at the time the contract was made, as to its enforcement, constituted the obligation of the contract.

2. That at the time this contract was entered into, the maker of the note was bound to pay the money or to let his property be sold under execution for the amount, provided that it should not be sold for less than two-thirds of its appraised value.

3. The act of Congress directing a sale on a credit of twelve months ought not to be construed to have a retrospective action, so as to embrace prior contracts.

The only question presented for our consideration by the assignment of errors we think may be narrowed down to a single point—and that is, how far does the law which was in force at the time the contract was made and fell due, as to its enforcement, constitute the obligation of the contract?

It may be well to observe, before we proceed to dispose of this question, that the note sued on was executed and became due after the adoption of the Constitution. This consideration will enable us to

---

jurisdiction and to adopt rules and mode of appeal when the statute is deficient. Wheeler v. State, 8 T., 228; Teas v. Robinson, 11 T., 774; St. Clair v. Hotchkiss, 28 T., 474; Simmons v. Fisher, 46 T., 126, 131; Vance v. State, 34 T. Cr., 395, 399.

decide this matter with all the light thrown on it by the adjudications of the courts in the United States. The clause contained in our Constitution which prohibits Congress from passing any law impairing the obligation of contracts is also found in the Constitution of the mother country; and it may be added there is not a single clause of the Constitution of that country which has given rise to more acute and vehement controversy, and the nature and extent of whose prohibitory force has called forth more ingenious speculation and more animated juridical discussion. What is a contract? What is the obligation of a contract? What is impairing a contract? To what classes of laws does the prohibition apply? These and many other questions of no small nicety and intricacy have vexed the legislative halls as well as the judicial tribunals of that country with an uncounted variety and frequency of litigation and speculation.

The learned judge, Mr. Justice Story, from whom many of the foregoing observations are taken, in his commentaries upon these various questions, remarks as to the impairing of the obligation of contracts: "Although there is," says he, "a distinction between the obligation of a contract and a remedy upon it, yet if there are certain remedies existing at the time when it is made, all of which are extinguished by new laws, so that there remain no means of enforcing its obligation and no redress, such an abolition of all remedies, operating in presenti, is also an impairing of the obligation of such contract. But every change or modification of the remedy does not involve such a consequence. No one will doubt that the Legislature may vary the nature and extent of remedies, so always that some substantive remedy be in fact left. Nor can it be doubted that the Legislature may prescribe the time and modes in which remedies may be pursued. The obligation to perform a contract is coeval with the undertaking to perform it. It originates with the contract itself and operates anterior to the time of performance. The remedy acts upon the broken contract and enforces a pre-existing obligation, and a State Legislature may discharge a party from imprisonment upon a judgment in a civil case of contract, without impairing the Constitution; for this is but a modification of the remedy, and does not impair the obligation of the contract." If these principles be correct, of which we have no doubt, they are decisive of the point under consideration. The Act of January 26, 1839, operated only as a modification, or change of the remedy, and this it was competent for Congress to do.

The complaint, however, in this instance comes from the debtor, Austin; but we see no good reason why the principles here established

Note 20.—Mills v. Waller, p. 416.

Generally fraud is a question of fact for the jury. It can not be presumed unless the circumstances are so strong and pregnant that no other reasonable conclusion can be drawn from them. Paxton v. Boyce, 1 T., 317; Briscoe v. Bronaugh, 1 T., 326; Bryant v. Kelton, 1 T., 415; Turner v. Lambeth, 2 T., 365; Tompkins v. Bennett, 3 T., 36; Graham v. Roder, 5 T., 141; De Leon v. White, 9 T., 598; Linn v. Wright, 18 T., 317; Baldwin v. Peet, 22 T., 708; Layton v. Hall, 25 T., 204; Van Hook v. Walton, 28 T., 59; Giddings v. Steele, 28 T., 732; Weisger v. Chisholm, 28 T., 780; Gerhard v. Neese, 36 T., 635;

should not embrace the debtor as well as the creditor. The act of Congress of 1839 was, as to him, but a modification or change of the remedy upon his broken contract, which we have already said was competent for that body to do. This evil, if indeed it be one, he might easily have averted by the payment of a just debt.

It is therefore ordered, adjudged and decreed, that the judgment of the district court be affirmed with costs.

## No. XXX.

### HIRAMS & DONAHO v. COIT.

#### (See Note 29.)

*Appeal from Liberty County.*

HUTCHINSON, JUSTICE.—The appellee filed his petition against the appellants, asserting title in a league of land in Tarquenton's prairie between the Trinidad and San Jacinto; that his title began by occupancy as a frontier settler, which was consummated by a grant from Charles S. Taylor, special commissioner for putting into possession and issuing titles to settlers on the frontier; that the appellants by collusion and fraud procured a grant for the same league; and praying decree for the land and that the adverse title should be canceled. There were plea, answer in chief, and response to interrogatories appended to the petition; documentary evidences of the conflicting titles, and oral evidence in several depositions. The cause was conducted as one in chancery and a decree rendered in favor of Coit for the land and vacating the defendants' claim as fraudulent.

We have carefully inspected the whole, and though we are satisfied that the most if not all of the proof within the power of the parties is now before us, yet from the variety and occasional conflict of the evidence, we deem it safer and more conducive to a satisfactory determination of the controversy to remand the cause with directions to have tried, by a jury in the county where the land is situated, such issues as may seem best calculated to enable the court below to pronounce its decree. It is therefore unnecessary to attempt a determination of the various and very important questions which in a most impressive and able argument of the counsel have been urged.

There was an objection made to the appeal bond, which, if sustainable, would have resulted in a dismission of the appeal. The statutes on the subject of such a bond are essentially remedial and must be liberally interpreted and applied. The chief object of such a bond is

King v. Russell, 40 T., 124; Kerr v. Hutchins, 46 T., 384; Sparks v. Dawson, 47 T., 138; Mathis v. Oberthier, 50 T., 329; Flanagan v. Oberthier, 50 T., 379; Weaver v. Ashcroft, 50 T., 427; Peiser v. Peticolas, 50 T., 638; Bibber v. Mathis, 52 T., 406; Scott v. Alford, 53 T., 82; Eicks v. Copeland, 53 T., 581; Morrison v. Clark, 55 T., 437; Ellis v. Valentine, 65 T., 532; Rohrbough v. Leopold, 68 T., 254; Elser v. Graber, 69 T., 222; Wylie v. Posey, 71 T., 34;

to afford to a creditor, whose demand is adjudged or decreed, security and indemnity for the delay and expense of prolonged litigation; and hence it is required to be in double the amount adjudged or decreed. Here the petition avers the land to be worth $20,000; but its actual value is neither ascertained nor decreed, whilst the land itself is required to be restored, and that remains a permanent security for itself. There is no pecuniary measure for the penalty of the bond afforded by the decree except the costs, the intermediate rents not having been put into contest. The omission of the name of an obligor in the body of a bond, when it is duly signed by him, although sometimes the subject of judicial cavil, forms no substantial objection to it. According to a clear and very impressive maxim of the Roman code, which when put in harmony with other important principles, should be of universal approbation—"as one binds himself, so shall he be bound." His signature sufficiently assures us of his intention.

Before awarding the issues contemplated, it is proper to declare a principle of equity practice, which in the trial of those issues ought to be observed by the court and jury. To the petition are appended interrogatories to be answered by the defendants. Hirams answered them. In his reply to more than one, after responding to the subject of interrogation, he proceeds to introduce matter not introduced in the question; as, for example, he gratuitously introduces himself as the purchaser of John Berry's improvement and occupancy. The well established rule is this, that what a party, in answer to discoveries prayed, responds directly in reference to the subject of the prayer or interrogation, it is to become evidence; the answer is then considered responsive and not excursive. But when in the answer anything not embraced by the prayer or interrogation is obtruded, it is to be disregarded. It can not avail the respondent, unless he has an equivalent allegation in his pleading and introduces proof aliunde to sustain the averment.

One of the difficulties, that have prevented a decision of the cause in this court, is that the resolution of the Mexican government of April and August, 1828, referred to in the thirty-second section of the Decree of Coahuila and Texas, No. 272, of March 26, 1834, can not be found to be consulted; and it is hoped the counsel may have access to them on a new trial.

This cause came on to be heard on the transcript of the record herein in the District Court of Liberty County; and the same being inspected and the arguments of counsel heard, because it seems to the court that sundry issues ought to be sent and tried by a jury in the said district court, it is therefore ordered and decreed by this court, that the decree

Schmick v. Noel, 72 T., 1; Bluntzer v. Dewees, 79 T., 272; Compton v. Marshall, 88 T., 50; Baxter v. Howell, 7 T. C. A., 198; Cooper v. Friedman, 23 T. C. A., 585; Granrun v. Rea, 24 T. C. A., 299; Dutton v. Clear, 26 T. C. A., 547. May be presumed from indebtedness at time of conveyance. Briscoe v. Bronaugh, 1 T., 326. Gross inadequacy of price leads to presumption of fraud. Mills v. Waller, Dal., 416; Briscoe v. Bronaugh, 1 T., 326; Bryant v. Kelton, 1 T., 415. Possession by vendor after sale is prima facie presumption of fraud. Bryant v. Kelton, 1 T., 415; Morgan v. Republic, 2 T., 279;

rendered herein be set aside; that this cause be remanded; that the court below do submit to the verdict of a jury the following issues: 1. To whom did John Berry transfer his improvement and occupancy of the land in controversy, whether to Campbell Berry or to the defendant Hirams; or whether he abandoned the land? 2. What title, if any, has the plaintiff to the land; is it fair and valid, or otherwise? 3. What title to the land has the defendant Donaho, if any; is it fair and valid or otherwise? 4. What effect, if any, had the agreement and relation between the defendants upon the title of Donaho? Let the court below upon these issues instruct the jury as to the laws governing the matters involved, and by the aid of the verdict proceed to decree finally as to law and equity may appertain. It is also considered here, that all the evidence heretofore heard by the court below and sent up in the transcript, including the answers of Hirams that are responsive to the interrogatories to him, be used on the trial of the issues with such other oral testimony as the parties may produce. It is farther ordered and decreed here, that the appellants recover their costs in this behalf in this court. Let this revisory decree be certified below for observance.

*Reversed and remanded.*

---

## JANUARY TERM, 1842.

### No. I.

### JONES v. A. P. NOWLAND.

*Appeal from Fort Bend County.*

HUTCHINSON, JUSTICE.—Nowland, by the name of A. P. Nowland, for the use of James Perry, administrator of the estate of A. McCoy, sued Jones on his note to him for $404.90, bearing interest at 12½ per cent until paid. It is copied in the petition, has no date, and there is no allegation as to its date or place of origin. As is usual in transcripts coming here, the papers in the case are copied without any introductory matter by the clerk showing when they became of record by being filed in the court. We are even left to suppose that the suit was instituted on or about the 15th April, 1839, from the date of the citation. At April term, 1839, the defendant pleaded that he did not promise to pay the note as alleged. At the fall term, 1839, the de-

---

McQuinnay v. Hitchcock, 8 T., 33; Converse v. McKee, 14 T., 20; Linn v. Wright, 18 T., 317; Mills v. Walton, 19 T., 271; Gibson v, Hill, 21 T., 225; Van Hook v. Walton, 28 T., 59; Hamburg v. Wood, 66 T., 168; Edwards v. Dickson, 66 T., 613; Peters Saddlery Co. v. Schoelkopf, 71 T., 418; Traders Nat. Bank v. Day, 87 T., 101. Fraud may be proven by circumstances or by presumptive

fendant "moved to set aside the suit on the ground that the defendant had been garnished to answer to what money he owed to A. P. Nowland." Probably at that term he also pleaded the nonprofert by the plaintiff of his letters of administration. At the spring term, 1840, he filed a general demurrer to the petition; at that term the court overruled the demurrer and gave judgment for the plaintiff for his principal and 5 per cent interest from July 1, 1838, until paid, with costs. The judge in a separate paper certifies his reasons for overruling the demurrer and giving only 5 per cent interest; but the testimony, if any was given, is not certified, and no disposition seems to have been made of the pleas and motion to set aside the suit. Such is the transcript in review.

Yet these proceedings occurred before the Legislature had attempted to give us a jurisprudence better understood by the courts, the bar and the people than that in use, and at a period when the country itself was in the process of formation; so that manifold allowances are to be indulged.

We take it for granted, too, that the presiding judge, in giving judgment only to the demurrer, could not have been apprised of the other pleas in the case. We also presume there was evidence to fix the time and place of the origin of the note and to regulate the rate of interest; but we must pass on the record as it is exemplified for our inspection.

According to the civil law, each party had the privilege of two distinct allegations in order to the presentation of the questions of law and of fact arising; the petition and the answer and the allegations corresponding to the replication and rejoinder for the introduction of new matter of excuse, of avoidance, and the like.

In practice it was necessary to present matters a limine litis and have them determined prior to the introduction of the merits upon the facts. In this case this rule was reversed by the counsel. The first plea was to the merits; the second plea at a subsequent term sought to raise a point of law; and the third, at a later term, questioned the legal sufficiency of the whole petition. Profert of the letters administrative to the beneficiary in the suit was not even proper. The defendant had no right to raise any question as to Perry's authority as administrator. He was not the plaintiff. Nowland, the payee, in whom was vested the legal interest, was properly suing, and it was immaterial to the defendant for whose use he sued. The court correctly overruled the general demurrer to the petition; but the error was in this, that after determining that matter, a jury ought to have been called to try the issue of fact. Indeed the second and third pleas ought to have been disregarded,

evidence.  Briscoe v. Bronaugh, 1 T., 326; Graham v. Roder, 5 T., 141; Thompson v. Shannon, 9 T., 536; Walcott v. Brander, 10 T., 419; Burch v. Smith, 15 T., 219; Van Hook v. Walton, 28 T., 59; Rider v. Hunt, 6 T. C. A., 238. Purchaser is not affected by fraudulent intent of his grantor, if he had no notice of it.  Pierson v. Tom, 1 T., 577; De Leon v. White, 9 T., 598; Fowler v. Stoneum, 11 T., 478; Sydnor v. Roberts, 13 T., 598; Snow v. Hawpe, 22 T., 168; Shearon v. Henderson, 38 T., 245; Collins v. Cooke, 40 T., 238; Flanagan v. Oberthier, 50 T., 379; Cavanaugh v. Peterson, 47 T., 197; Wagon Works v.

stricken from the record, as coming too late. The motion to set aside the suit because of the garnishment should have been rejected. Its matter was the proper subject for a plea, or answer in chief.

This cause coming on to be heard on the transcript of the record in the District Court of Fort Bend, and it being inspected and the arguments of counsel heard, because it seems to the court here that there is error in the judgment below, it is considered by the court here that the said judgment be reversed; that the cause be remanded; that the parties be allowed to amend their pleadings with a view only to have the merits of the case decided; that the appellant recover of the appellee his costs in this court, and this decision be certified below for observance.

*Reversed and remanded.*

## No. II.

### WHITING v. TURLEY.

#### (See Note 30.)

*Appeal from Travis County.*

HUTCHINSON, JUSTICE.—Turley sued Slocomb and Whiting for that he, at their request, furnished and built for them a fence of 223 panels at $6 per panel; that they in consideration promised to pay him the amount, etc. The petition contained another demand in account. Slocomb and Whiting were both cited and pleaded in one plea, "not guilty, jointly or severally." It was proved that Turley contracted with Slocomb to furnish the materials, etc., at the price, not naming in what currency—Whiting not mentioned—the contract being with Slocomb alone; that at the time Slocomb was not Whiting's partner, but was working for him on hire; that the fence was built by Turley; the witnesses varying as to its quality and value. It is certified that there was no evidence that Slocomb was either the partner or agent of Whiting, or that Whiting had any interest in or knowledge of the transaction. The jury assessed $204.18¾ for Turley and found that there was no partnership between Slocomb and Whiting at the contract; that Whiting was justly bound for the sum assessed; that they had no evidence that Slocomb induced Turley to believe he was acting as agent at the time of the contract; and that the contract was made by Slocomb. After this verdict, and before reasons in arrest of judgment, Turley's counsel moved the court to permit him to dismiss as to Slocomb, and to give judgment against Whiting. This motion was in writing. Two reasons in arrest of judgment were filed: Misjoinder of defendants; the verdict irresponsive to the issue—contradictory of the plaintiff's

---

Tidball, 59 T., 291; Publishing Co. v. Johnson, 68 T., 273; Le Page v. Slade, 79 T., 473; Brackenridge v. Cobb, 85 T., 448; Watkins v. Sproull, 8 T. C. A., 427; Richardson v. Lewis, 4 App. C., sec. 42; Ranney v. Hogan, 1 U. C., 257. Must be a purchaser for value. Lewis v. Castleman, 27 T., 407; Belt v. Raguet, 27 T., 471; Tuttle v. Turner, 28 T., 759; Collins v. Cooke, 40 T., 238; Brown v.

allegations—inherently contradictory; and that there could not be judgment against Whiting. The court allowed the nolle prosequi moved, and gave judgment against Whiting. He appealed. The counsel for the appellant insists it was error not to have sustained the reasons in arrest of judgment, and that there was no evidence on which to charge the appellant; and the counsel for the appellee contends that the verdict responded to the allegations; that the nolle prosequi was correct, and the judgment good. It was a favorite object of the Constitution to have introduced the body of the English common law as being in the language of our people and a code to which mostly they had been accustomed. It was at length introduced so far as consistent with the Constitution, our statutes, condition and institutions; but the act of adoption was concurrently qualified by another, abolishing the common law system of pleading and requiring suits to be by petition and answer as theretofore; thus, on the subject of the pleadings, leaving us to find principles and criteria in a language generally unknown to us. Now at common law a civil prosecution embraces various parts or divisions. First, the process and bail, then the pleadings, then the postea including trial, then the judgment, the execution and the appeal, or writ of error. The pleadings are only the graphic allegations of the parties in order to the decision of the questions of law and trial of the matters of fact arising. It must be plain to every one that we are constrained for the reasons given to confine the last named statutory provision to a strict interpretation; and hence the written averments of the cause of action, of the defense of what pertains to a presentation for determination of the matters in controversy, and those only, are not to be regulated by the common law, but referred to the doctrines and jurisprudence coming to us through Coahuila. Herein we must obey the legislative will and endure as long as we may the constant perplexities that in consequence annoy and delay us at each step.

Among the principles of the common law as understood and practiced at its introduction, and not discarded as pertaining to the pleadings, are those governing the form, the parties to the action, and the proceedings of the petition and answer.

In regard to the form, this was clearly an action at law to have compensated in damages a breach of contract, and not a remedy in chancery for the redress of infracted equitable rights. If the liability was joint it was incumbent on the plaintiff below to sue all who were liable to him. If the contract had been joint and several, he might have sued any one or all. If the defendants had been partners, he might have sued such of the partners as were known to him, and the nonjoinder of

Hedge Co., 64 T., 396; Steffian v. Bank, 69 T., 513; Kerr v. Oppenheimer, 20 T. C. A., 40. Protected only to extent of value paid up to time of notice. Tillman v. Heller, 78 T., 597; Cleveland v. Butts, 13 T. C. A., 272. Assignee of an option is not protected as an innocent purchaser against the fraud of his asignor. O. & P. L. Co. v. Tell, 95 T., 586. The sale is void if the purchaser had notice of the fraud, though he paid value. Moseley v. Gainer, 10 T., 393; Walcott v. Brander, 10 T., 419; Fowler v. Stoneum, 11 T., 478; Edrington v. Rogers, 15 T., 188; Wright v. Linn, 16 T., 34; Mills v. Howeth, 19 T., 257;

a dormant or unknown partner could only have been the subject of a plea a limine.  Slocomb and Whiting were here sued, not as partners, but as individuals on an assumed joint liability.  This was an election by Turley of defendants from which he could not recede.  He was bound to know for whom he furnished the materials and did the work and to whom he gave credit, there being no partnership trusted.  Even in the instance of a joint and several liability, having made the election of whom to sue, he must abide it.  The action being ex contractu, he could not, in England, discontinue as to either of several sued, until process of outlawry; and here when that proceeding would not comport with our polity he could not discontinue, until after the return of at least one (perhaps two) citations non est inventus.  But in all actions on contract where several are sued and are arrested or cited, they are brought into court, and it is incumbent on the plaintiff to make out a case to charge them.  This is the general rule, to which there are the exceptions of infancy, coverture, etc.

It is otherwise in actions ex delicto, for obvious reasons.  How far our statute of amendments may relax these principles of the common law it is not material now to decide.  It allows all amendments in the proceedings, *before verdict,* that shall seem necessary to reach the merits between the parties.  Whether in its utmost extension as a remedial provision, it may before verdict allow a defendant misimpleaded to be dismissed, or a new defendant introduced, we do not here determine.  We all concur that in this case the discontinuance, after verdict, was a discontinuance of the action.  The jury found that the contract was with Slocomb; he, therefore, was clearly chargeable.  If, too, Whiting was liable, as found, the plaintiff's case was made out, and he ought to have proceeded to judgment against both; but in regard to him the verdict is uncertain and unsatisfactory.  It finds, what is in conflict with the conclusion, that he is liable; that he was not Slocomb's partner; that Slocomb's agency (if there was an agency) was not disclosed, and that the contract was with Slocomb.  Changes of parties in chancery depend on reasons arising out of the peculiar jurisdiction of that court; as for instance it is one of its principles, that having cognizance of one branch of a transaction it will take jurisdiction of the whole, and call before it all persons concerned, so as to determine the whole at once and finally, thereby preventing multifarious and vexatious litigation.

It may be proper to notice passingly the provision in the statute requiring the district judge to proceed in the first instance to try the cause as at law, and if he can not succeed in the effort, then to ascend the

Humphries v. Freeman, 22 T., 45; Castro v. Illies, 22 T., 479; Weisiger v. Chisholm, 22 T., 670; Baldwin v. Peet, 22 T., 708; Garahy v. Bailey, 25 T. Supp., 294; Weisiger v. Chisholm, 28 T., 780; Eliot v. Whitaker, 30 T., 411; Gaston v. Dashiell, 55 T., 508; Greenleve v. Blum, 59 T., 124; Traylor v. Townsend, 61 T., 144; McKinnon v. Lumber Co., 63 T., 30; Brown v. Hedge Co., 64 T., 396; Ellis v. Valentine, 65 T., 532; Blum v. Simpson, 66 T., 84; Tillman v. Heller, 78 T., 597; Mixon v. Symonds, 2 T. C. A., 629; Worsham v. Vignal, 14 T. C. A., 324; Bank v. Martin Brown, 20 T. C. A., 52; Kerr v. Oppenheimer, 20 T. C. A., 140; Koch v. Bruce, 20 T. C. A., 364; Hall v. Harga-

woolsack and cancel it! A volume might be filled with disquisitions upon the meaning and scope of the provision. A hundred judges, in almost any conceivable case, might differ in some degree as to its interpretation and exact function. Possibly it may mean this, that in the development of what are to be adjudicated in the cause, if the judge consider them as more properly determinable according to the course and powers of a court of chancery, he may allow the pleadings and parties to be so changed as to accomplish the object; but if so, still there ought to be put on record his order for the change, so that if illegal or improvident, it may be revised; uniformity in the application of the act is impossible. The exertion of the undefined power given is dangerous, because by the transition from the common form the trial by jury is so far evaded as to leave its intervention to the option of the judge. In this case there was no resort to this statute. The case is still where it began at law; and the nolle prosequi can not be repaired.

We all concur that there was no sufficient evidence on which to support the judgment against Whiting. It must be totally reversed.

*Reversed and remanded.*

## No. III.

### WILLIAM HART v. AUGUSTUS W. KING.

#### (See Note 31.)

*Appeal from Bowie County.*

JONES, JUSTICE.—This is an appeal from a judgment of the District Court of Bowie County, rendered at the fall term of said court in the year 1841. The suit was instituted by the plaintiff Hart against the defendant King upon two promissory notes, executed by the defendant's testator in his lifetime to the plaintiff. At the trial term of the court the defendant, by his counsel, entered the plea of nil debet, and immediately thereafter filed a general demurrer to the plaintiff's petition, upon which the following judgment was rendered: "This cause coming on to be heard on demurrer, the defendant craved oyer of the notes, which was refused by the plaintiff. The cause was then heard on demurrer, which demurrer was sustained by the court. It was therefore ordered, etc." It is difficult to discover upon what grounds the demurrer to the plaintiff's petition was sustained, unless they may be explained by the bill of exceptions in which is contained the following sentence: "The defendant verbally craved oyer of the plaintiff of the notes upon which the suit was brought, which was refused by the plaintiff.

dine, 23 T. C. A., 149; Blankenship v. Turner, 3 App. C., sec. 427. Or if he has notice of facts sufficient to excite the suspicion of a prudent man and put him upon inquiry. Mills v. Howeth, 19 T., 257; Humphries v. Freeman, 22 T., 45; Garahy v. Bailey, 25 T. Supp., 294; Edmundson v. Silliman, 50 T., 106; Scott v. Alford, 53 T., 82; Cox v. Miller, 54 T., 16; Blum v. Simpson, 66 T., 84; Blum v. Simpson, 71 T., 628; Dodd v. Gaines, 82 T., 429; Ratto v. Bluestein, 84 T., 57; McConnell v. Bruggerhoff, 1 App. C., sec. 1005; Bailey v. Carrington, 3 App. C., sec. 179; Scheuben v. Wheeler, 4 App. C., sec. 211. No-

---

tice to agent is notice to principal. De Leon v. White, 9 T., 598. A subsequent bona fide purchaser for value is not affected by the fraud of his vendor. Sydnor v. Roberts, 13 T., 598; Barnes v. Hardeman, 15 T., 366; George v. Watson, 19 T., 354; Johnston v. Smith, 21 T., 722; Hardy v. Broaddus, 35 T., 668; Link v. Page, 72 T., 592. While inadequacy of price in any case is a circumstance to be considered in determining the question of fraud, it is not of itself sufficient proof. Burch v. Smith, 15 T., 219; Moore v. Lowery, 27 T., 541; Brown v. Texas Cactus Hedge Co., 64 T., 396. But it may be such as to only require very slight evidence and it may be so gross as to be decisive evidence of fraud. Edrington v. Rogers, 15 T., 188; Burch v. Smith, 15 T., 219; McFaddin v. Vincent, 21 T., 47; Chamblee v. Tarbox, 27 T., 139. At civil law, inadequacy of half the value is sufficient to avoid the sale. Briscoe v. Bronaugh, 1 T., 326.